Merrimack,  }
March 1, 1910. }

## PIPER v. BOSTON & MAINE RAILROAD.

The joining upon a single valid consideration of an agreement enforceable at law with one which is unenforceable does not prevent the enforcement of the former after the acceptance of the consideration, provided the two are separable.

Where the servant of an express company, in consideration of his employment, waives any right to damages for personal injuries caused by the negligence of a railroad company or its servants, the stipulations of the contract are separable and the agreement is valid in so far as it relates to negligence of the railroad's employees.

Section 11, chapter 191, Public Statutes, does not limit the damages recoverable in an action for physical injuries brought by the injured person in his lifetime and prosecuted after his decease by his administrator.

A party who takes advantage of the statute abolishing special pleading and files a brief statement of defence cannot subsequently claim the benefit of a special plea.

The improper rejection of a brief statement of defence is harmless error if the matter therein set forth is provable under the general issue.

When it is impossible to say that a verdict was not founded upon a ground to which improperly excluded evidence might have furnished an answer, the verdict is ordinarily set aside and a new trial granted.

Where evidence offered in defence of an action is improperly excluded, a verdict for the plaintiff may be permitted to stand as to questions of fact in the decision of which no error is found, and a further trial granted as to those issues which have not been properly determined.

An estoppel cannot result from a verdict or finding until its verity is established by the rendition of judgment thereon.

Allegations or admissions in a brief statement of defence are not evidence for the plaintiff.

Where an action is remanded for a partial retrial, the question as to what issues shall be retried is largely one of fact for the trial court.

In the absence of fraud or imposition, one who executes a written contract is conclusively presumed to understand its terms.

CASE, for negligence causing personal injury, previously reported *ante*, 228. The plaintiff having died since the former trial, the action is prosecuted by his administratrix. In preparation for further trial, both parties requested sundry rulings of law and each excepted to some which were made. The presiding justice (*Pike*, J.) deemed it advisable that the questions raised should be settled before a trial, and transferred the case from the October term, 1909, of the superior court, at the request of the defendants.

*Henry F. Hollis* and *James W. Remick* (by brief and orally), for the plaintiff.

*John M. Mitchell* and *Dewitt C. Howe* (by brief and orally), for the defendants.

PARSONS, C. J.   In April, 1909, it was decided in this case that the plaintiff's agreement to waive any claim for damages from an injury resulting from the negligence of the defendants' servants, as the condition upon which he was permitted to work for the Express Company in the defendants' train-shed, was valid and an answer to a suit founded on such negligence.

1. The case being again in this court upon exceptions to certain rulings in the superior court made in anticipation of further trial, it appearing that the written contract offered as evidence in support of the brief statement "provided for the exemption of the railroad from liability, not only for the consequences of the negligence of its servants, but also for the consequences of its own negligence," the plaintiff contends that the stipulation releasing the defendants' own negligence is contrary to public policy, illegal, and void, and that consequently the other stipulations of the contract are illegal and incapable of enforcement.   This question the plaintiff brings here by exception to the failure of the superior court to rule in accordance with this contention.   It is objected that the question now raised is involved in the former decision and cannot be re-examined except upon a motion for rehearing, which it is now too late to entertain.   No hearing has been had since the former decision; and if it were true, as claimed, that the court by inadvertence or misapprehension had upheld an illegal agreement, it is probable some method for the correction of the error could be discovered.   But however this may be, as the question has been fully argued it may be as well first to inquire whether the embarrassing situation charged exists.   Whether there was at the trial evidence of negligence to which the agreement to release the defendants from liability would not be an answer, has not been determined.   It would be useless to consider the question now, because upon another trial, if one should be had, neither party would be confined to the evidence previously introduced.   The defendants concede that the release from their own negligence is broad enough to cover a liability as to which it cannot be sustained. It is therefore admitted that the agreement contains stipulations for the benefit of the defendants which the law would refuse to enforce.

In support of the contention, the plaintiff cites cases resting upon

the proposition that a right cannot be founded upon a violation of law, and hence no legal right can grow out of a contract promoting or intending to promote such a violation (*Beach* v. *Kezar*, 1 N. H. 184; *Roby* v. *West*, 4 N. H. 285; *Bliss* v. *Brainard*, 41 N. H. 256; *Hill* v. *Spear*, 50 N. H. 253); and that where the whole or a part of the consideration for a promise is an illegal act or promise, a promise founded on such consideration cannot be enforced. *Clark* v. *Ricker*, 14 N. H. 44; *Weeks* v. *Hill*, 38 N. H. 199; *Kidder* v. *Blake*, 45 N. H. 530; *Bixby* v. *Moor*, 51 N. H. 402; *Williams* v. *Hastings*, 59 N. H. 373; *Foote* v. *Nickerson*, 70 N. H. 459, 518; *Hill* v. *Hill*, 74 N. H. 288, 290.

These propositions are elementary. They are sustained by other cases in the reports and by the numerous citations of the brief from other jurisdictions. But it is to be noted that in all the cases cited in which the consideration is illegal in part only, the promise founded thereon is held invalid upon the ground that the consideration is indivisible; and since in such case the promise rests upon every part of the consideration, the result is the same as if the whole consideration were illegal. When the consideration is in part good and in part bad, and there are several promises, if it can be seen that a promise otherwise valid depends upon the good part of the consideration it is upheld, although the contract contains agreements unenforceable because dependent upon the illegal part. To render the promise invalid, it must in fact rest upon the illegal or void consideration; and where the contract is divisible, such of the promises as rest upon the valid part of the consideration will be enforced.

*Carleton* v. *Woods*, 28 N. H. 290, was assumpsit for the price of goods and liquors sold according to a schedule in which the price was attached to each article. Although the sale of liquors was illegal, as it could be ascertained what sums the defendant agreed to pay for the goods legally sold, recovery was permitted for the price of the goods, but not for the liquor. The contract containing separable legal and illegal stipulations was enforceable for those that were legal. To the same effect are: *Walker* v. *Lovell*, 28 N. H. 138, 145; *Pecker* v. *Kennison*, 46 N. H. 488. See, also, *Edgerly* v. *Hale*, 71 N. H. 138, 142.

The plaintiff's authorities are sound, but inapplicable. A contract may be part of an illegal purpose, or entered into to carry out such a purpose. The consideration may be a legal or an illegal act or promise, or may consist of both legal and illegal acts or promises. On the other side, the promises may be to do legal or illegal acts, or both. Treating the agreement as a simple contract, there is no question of the immorality, illegality, or voidability of any part of the consideration for Piper's promises — his employment by the

Express Company or the defendants' assent to his presence in the train-shed. Neither was the purpose of the contract — the securing of employment by Piper and of his services by the Express Company — in violation of any rule of law. Neither was it intended, so far as appears, that Piper should be required or permitted in the course of his employment to do any illegal act. The cases referred to are therefore not in point.

But the validity of a legal promise upon a good consideration, though joined in the same instrument or agreement with an illegal promise upon the same consideration, is determined by the same principle — the separability of the good from the bad. Such has been the law from an early day. "At the common law, when a good thing and a void thing are put together, in one self-same grant, the same law shall make such construction that the grant shall be good for that which is good, and void for that which is void." *Bishop of Chester* v. *Freeland*, Ley 71, 79. "It has sometimes been thought that the maxim ' void in part, void *in toto* ' expresses a general principle of law ; but in reality it does not, as every one must see on a moment's reflection. In the nature of things, in reason, and, above all, in justice, it may be true that a deed, will, or other instrument can in part be good, although another part is void because in contravention of positive law." *Savage* v. *Burnham*, 17 N. Y. 561, 576.

Where the defendant has received the consideration in full for the doing of two things, no ground appears in reason why, if the law will excuse him from performance of one, he should for that reason alone also be released from the other promise. There is none in the law ; for " the common law doth divide according to common reason, and having made that void that is against law, lets the rest stand." *Norton* v. *Simmes*, Hob. 12, 15. As says Kent, quoting the foregoing : " Where any matter, void even by statute, be mixed up with good matter which is entirely independent of it, the good part shall stand and the rest be held void ; though if the part which is good depends upon that which is bad, the whole instrument is void." 2 Kent *468. Or as stated by Chitty : " So, if a contract be made on several considerations, one of which is illegal, the whole contract is void, and that whether the illegality be at common law or by statute. But where the consideration is tainted by no illegality, and some of the promises only are illegal, the illegality of these does not communicate itself to or taint the others, except when, owing to some peculiarity in the contract, its parts are inseparable." Chit. Cont. (10th Am. ed.) 730.

" A distinction must be taken between the cases in which the consideration is illegal in part and that in which the promise

founded on the consideration is illegal in part. If any part of a consideration is illegal, the whole consideration is void; because public policy will not permit a party to enforce a promise which he has obtained by an illegal act or an illegal promise, although he may have connected with this act or promise another which is legal. But if one gives a good and valid consideration, and thereupon another promises to do two things, one legal and the other illegal, he shall be held to do that which is legal, unless the two are so mingled and bound together that they cannot be separated; in which case the whole promise is void." 1 Par. Cont. (9th ed.) 496.

Page on Contracts, a more modern authority, is to the same effect, applying the same as follows (*vol.* 1, *s.* 510): "So bills of lading otherwise valid, containing covenants void as relieving a common carrier from liability for negligence, are not entirely invalidated thereby, but only such provision is void." See 9 Cyc., *p.* 564, *s.* 10; 15 Am. & Eng. Enc. Law (2d ed.) 991.

The text-writers are supported with almost entire unanimity by the reported cases. *Irvine* v. *Stone*, 6 Cush. 508; *Rand* v *Mather*, 11 Cush. 1; *Dean* v. *Emerson*, 102 Mass. 480, 485; *Widoe* v. *Webb*, 20 Ohio St. 431,— 5 Am. Rep. 664, 666; *Hanauer* v. *Gray*, 25 Ark. 350,— 99 Am. Dec. 226; *St. Louis etc. Ry.* v. *Matthews*, 64 Ark. 398,— 39 L. R. A. 467, 470; *United States* v. *Bradley*, 10 Pet. 343, 363; *United States* v. *Hodson*, 10 Wall. 395, 408; *Oregon etc. Co.* v. *Winsor*, 20 Wall. 64, 70, 71; *United States* v. *Mora*, 97 U. S. 413, 422; *Western Union Tel. Co.* v. *Railway*, 11 Fed. Rep. 1, 4; *Mallan* v. *May*, 11 M. & W. 653, 659.

The material question is whether the invalid promise is severable from the other engagements of the contract. In determining this, attention is given to the fact itself rather than to the language used in stating the contract. In *Rand* v. *Mather*, 11 Cush. 1, the defendant told men at work for a contractor building a house for the defendant, who were refusing to work because their wages were in arrears, to go on with the work and they should be paid in full; and it was held that the promise to pay for future work was severable from that to pay the amount then due, and enforceable. In *Green* v. *Price*, 13 M. & W. 695, the covenant was not to carry on a particular trade in London or Westminster, or within 600 miles from the same. The provision as to 600 miles was void as in general restraint of trade, but the covenant as to London and Westminster valid. Other illustrations are found in the cases cited. See *Oregon etc. Co.* v. *Winsor*, 20 Wall. 64, 71; *Nicholls* v. *Stretton*, 10 Q. B. 343.

In some of the cases a distinction is made between the effect of a separable promise that is merely unenforceable and one illegal, as

an agreement to do something in violation of law; but this point need not be considered, because the stipulation in question, that Piper would not claim damages for injury, was not forbidden by law. "It is not like a contract to do an illegal act; it is merely a covenant which the law will not enforce; but the party may perform it if he chooses." *Pollock*, C. B., in *Green* v. *Price*, 13 M. & W. 695, 699. Even if the stipulation is unenforceable, it does not purport to bind Piper to any act forbidden by law, morals, or public policy. No statute required him to sue the railroad after his injury, or imposed a penalty upon him for refraining from so doing. If, recognizing that the privilege in the train-shed was granted upon the condition that he would make no claim for damages for injury through the defendants' negligence, after the accident he had done as he agreed he would do (if he did so agree), and had executed a valid discharge to the defendants of all claim for damages, he would have violated no rule of the common law, no provision of the statutes, and no canon of morality. There is even promise of ultimate honor for one "that sweareth to his own hurt, and changeth not." ' The stipulation as to the defendants' personal negligence is therefore neither illegal nor immoral. At most, it is simply voidable—unenforceable.

The agreement to release from the defendants' personal negligence is severable from the agreement to release from the negligence of their servants, and if unenforceable does not affect the valid agreement for which Piper has received the full agreed consideration. The defendants having paid Piper the full consideration of the contract, "it may well be that they can call on him to perform all of his agreements except such as are unlawful. In such case they would merely waive or forego a part of what they were to receive, and recover or enforce the rest." *Bishop* v. *Palmer*, 146 Mass. 469, 475. The question has not heretofore in this state been considered doubtful. *Hedding* v. *Gallagher*, 72 N. H. 377, 386; *Edgerly* v. *Barker*, 66 N. H. 434, 473. The exception to to the refusal to rule as requested is overruled.

2. As this personal action did not survive at common law, the right of the plaintiff's administratrix to prosecute it is determined by the statute upon the subject at the time of his death. All provisions claimed to be material are contained in seven sections of chapter 191 of the Public Statutes, which are as follows:

"Sect. 8. Actions of tort for physical injuries to the person —. although inflicted by a person while committing a felony — and the causes of such actions, shall survive to the extent, and subject to the limitations, set forth in the five following sections, and not otherwise.

"Sect. 9. If such an action is pending at the time of the decease

of one of the parties, it shall abate and be forever barred, unless the administrator of the deceased party, if the deceased was plaintiff, shall appear and assume the prosecution of the action before the end of the second term after the decease of such party, or, if the deceased party was defendant, unless the plaintiff shall procure a *scire facias* to be issued to the administrator of the deceased party before the end of the second term after the original grant of administration upon his estate.

" Sect. 10. If an action is not then pending and has not already become barred by the statute of limitations, one may be brought for such cause at any time within two years after the death of the deceased party, and not afterwards.

" Sect. 11. The damages recoverable in any such action shall not exceed seven thousand dollars.

" Sect. 12. If the administrator of the deceased party is plaintiff, and the death of such party was caused by the injury complained of in the action, the mental and physical pain suffered by him in consequence of the injury, the reasonable expenses occasioned to his estate by the injury, the probable duration of his life but for the injury, and his capacity to earn money, may be considered as elements of damage in connection with other elements allowed by law.

"Sect. 13. In such case, the damages recovered, less the expenses of recovery, shall belong and be distributed as follows:

I. To the widow or widower of the deceased, one half thereof; and to the children of the deceased the other half in equal shares.

II. If there be no child, to the widow or widower, the whole thereof.

III. If there be no child and no widow or widower, to the heirs-at-law of the deceased according to the law of distribution.

" Sect. 14. All other actions and causes of action existing in favor of or against a deceased person, except those for the recovery of penalties and forfeitures of money under penal statutes, shall survive, and may be prosecuted or defended by his administrator."

The last section abrogates the common-law rule as to all actions except those under penal statutes and those included in the preceding sections. This action of tort for personal injuries is not helped by section 14. Under section 8 and the five following sections, the legislature dealt with two subjects: pending actions for personal injuries, and the causes of such actions where none had been brought at the time of death.

" Section 9 relates to the survival of such an action pending at the decease of the party." *Poff* v. *Telephone Co.*, 72 N. H. 164, 165. It is agreed that the administratrix has complied with the

provisions of this section. Section 10 by its terms applies only "if an action is not then pending." Section 12 applies only when "the administrator of the deceased party is plaintiff, and the death of such party is caused by the injury complained of," and by its terms does not apply to an action in which the party is plaintiff and which the administrator is permitted to prosecute under section 9. Section 13, from the context and the history of the legislation, plainly relates only to the distribution of the damages recovered where the death of the party is an element to be considered in assessing them. "In such case," in section 13, means the case described in the preceding section. The controversy arises over section 11 : "The damages recoverable in any such action shall not exceed seven thousand dollars." The question is simply whether by "any such action" was intended the action permitted by section 10 to be brought after the death of the party injured, or whether the expression includes pending actions, the prosecution of which is permitted the administrator under sections 8 and 9.

The general rule of grammar and law is that relative terms refer to the next preceding antecedent, unless it is clear from the context that a different one was intended. *Holt* v. *Smart*, 46 N. H. 9, 10 ; Broom Leg. Max. *529. This rule has been, so far as applicable to the present case, adopted by statute. "The words 'said' and 'such,' when used by way of reference to any person or thing, shall apply to the person or thing last mentioned." P. S., c. 2, *s.* 14. In the construction of statutes, the direction of the legislature as to the definition of terms and the construction of language is to be followed. *State* v. *Lager Beer*, 70 N. H. 454 ; *Dane* v. *Dane*, 67 N. H. 552 ; *Jones* v. *Surprise*, 64 N. H. 243, 245. Applying this rule, "such action" in section 11 means the new action authorized to be brought by section 10, and not the pending action permitted to be prosecuted by section 9, as in section 13 the words "in such case" refer to the damages the elements of which are defined in the preceding section. This rule must govern unless the result is "inconsistent with the manifest intent of the legislature or repugnant to the context of the same statute." P. S., c. 2, *s.* 1. Of this there is no evidence in the statute itself or in the history of the legislation.

Since 1844, actions pending at the death of the party have survived to his administrator, whether the cause of action did or did not survive at common law. Laws 1844, c. 139 ; G. L., c. 198, *s.* 16 ; *Ib.*, c. 226, *s.* 12; *Saltmarsh* v. *Candia*, 51 N. H. 71. Sections 8 and 9, of chapter 191, of the Public Statutes, introduced a time limit for appearance and issuance of a *scire facias* in pending actions for personal injuries. To that extent the law was changed. But the action the administrator was thereby admitted to prosecute was

the pending action — not some other action with special limitations. There is nothing repugnant to the provisions of the statute in the conclusion that section 10 and the three following sections all relate to the second subject — causes of actions — and were not intended to apply to pending sections. Until 1885, no action for personal injury not resulting in death was maintainable unless suit was brought in the lifetime of the party injured. Chapter 11, Laws 1885, providing that no action or cause of action shall be lost by the death of either party, destroyed entirely the common-law rule abating actions or causes of action by the death of either party.

The common-law rule that no action could be founded on the death of a human being (*Chaloux* v. *Paper Co.*, *ante*, 281) was partially modified by the proceeding by way of indictment against a railroad if the life of any person not in their employment should be lost through the negligence of the railroad or its employees (Laws 1850, *c.* 953, *s.* 7), and appears to have been disregarded by the provincial statute requiring towns to make payment in certain cases for the death of a person through the insuffiency of a highway. Prov. Laws, *ed.* 1716, *p.* 151; Prov. Laws, *ed.* 1771, *c.* 98, *s.* 6. The provincial statute was repealed in 1786. *Wheeler* v. *Troy*, 20 N. H. 77, 79. In 1879, the railroad statute was extended so as to apply to all persons, and the form of the proceeding was made civil instead of criminal. Laws 1879, *c.* 35. While under the statute of 1879 the cause of action survived, the fact of death was not an element in the damages recoverable. *Corliss* v. *Railroad*, 63 N. H. 404. In 1887, the act of 1879 was repealed and new provisions adopted which authorized suit for injuries resulting in death and provided for the consideration of the fact of death in the assessment of damages. This statute limited the time of bringing suit to two years after the death and the damages to $7,000, substantially as in the sections of the Public Statutes above quoted. The act also required, as a precedent to bringing suit, notice to the defendant by the administrator within sixty days after the injury. In *French* v. *Mascoma Co.*, 66 N. H. 90, it was held that the act of 1887 did not repeal the act of 1885 before referred to, and hence an action could be maintained by the administrator of a person who had died from an injury resulting from the defendant's negligence, although the notice required by the act of 1887 had not been given, from which it followed that the two-years limitation was not a bar to such a suit. The result was that in case of death by another's fault two different actions were permitted, one to be promptly brought upon notice and in which the elements of damage recoverable were specified, and one governed by the

ordinary rules of limitation and to which the special provisions as to damages did not apply.

It is probable that sections 10 to 13, of chapter 191, were intended to remove this anomaly, and that the only subject intended to be affected thereby was the causes of action for personal injury in which no suit had been brought at the death of the party. This seems apparent from the marginal references to the statutes of 1887, 1879, and section 14, chapter 282, General Laws, none of which refer to pending actions. It is not probable that, by the mere grouping of the two subjects under one head, it was intended to incorporate special provisions theretofore relating solely to suits brought after death — a comparatively modern innovation — into the provisions relating to the survival of pending actions, which had remained unchanged in effect for nearly half a century. A change of that character will not be intended from a revision, except from a substantial change in phraseology clearly indicating an intent to change the law. *Noyes* v. *Marston*, 70 N. H. 7, 22. There is no evidence of an intent that the language should be read other than by the rule laid down by the legislature for its construction. That rule does not extend the limitation of $7,000 beyond the action authorized by the preceding section. The damages recoverable in this suit are not limited. Prior to the Public Statutes, the $7,000 limitation applied only to suits for injuries resulting in death. Whether the result of the revision is to make it applicable to suits brought after the plaintiff's death for personal injuries not causing the death is not now in question. The question is one not likely to arise. There is no occasion to discuss it now.

3. At the close of the opinion filed in this case in April, 1909, it was suggested that the majority of the court thought that upon a further trial the voluntary character or otherwise of the contract between the railroad and the Express Company might be controlling. This statement was erroneous and is withdrawn. The opinion filed in which two members of the court concurred proceeded upon grounds entirely independent of the Express Company contract. The third member of the court who concurred in the result did so upon the ground that the plaintiff could not take advantage of voidable provisions in the contract between the Express Company and the railroad unless he showed that the Express Company relied upon such invalidity, as an answer to their covenants of indemnity. In either view, the only material question is the validity of Piper's agreement to release the railroad from the payment of damages for an injury occasioned by the negligence of their servants. It is clear that upon the ground upon which the case has been decided the invalidity or otherwise

of the indemnity provisions of the Express Company contract is immaterial. This conclusion renders immaterial the rulings as to the issues upon this point which should be submitted to the jury and as to the burden of proof thereon, and disposes of the other issues suggested and the ruling requested by the plaintiff as to matters of fact claimed to bear upon the validity of the Express Company contract. Though the contracts may contain voidable or non-enforceable covenants, they are not entirely void. *Clements* v. *Marston*, 52 N. H. 31, 39; *Lane* v. *Shackford*, 5 N. H. 130; cases *supra*. Their validity to some extent, as well as that of Piper with the Express Company, would seem essential to sustain the allegations of the declaration, that the Express Company occupied the station by license of the defendants and that Piper was lawfully at the place of the accident.

4. The defendants' pleading was entitled a "brief statement." It neither began nor concluded as a special plea. Having taken advantage of the statute abolishing special pleading, they cannot now claim the benefit of a special plea, if there is any. Treating the action of the court in sustaining the demurrer to the brief statement (which was not demurrable) as the granting of a motion to reject the brief statement, technically the defendants were not harmed by the procedure, if they could have introduced the evidence under the general issue, of which there does not seem to be much doubt. Gould Pl., c. 6, s. 55. But whether this be so or not, as the parties had in effect submitted to the trial court the competency of the contracts as an answer to the action, and the defendants had acquiesced in the ruling understanding they were protected by their exception, justice seemed to require they should have the benefit of it. The case therefore stands as though, under appropriate pleadings, the defendants had offered the contracts as a bar to so much of the plaintiff's action as depended upon negligence of the defendants' servants and excepted to their exclusion. The exclusion being error, and it being impossible to say that the verdict was not founded upon the ground to which the excluded evidence might be an answer, the ordinary result would be the setting aside of the verdict and the order of a new trial.

When the case was here before it appeared to stand upon negligence of the defendants' servants. That being the case, if there were no answer to the excluded evidence the case would be disposed of by the proof; while if the plaintiff was able to destroy this evidence by other competent evidence, the bar set up by the defendants would be overthrown and the plaintiff entitled to judgment upon the questions of fact in the decision of which no error was found. The questions which it was understood might "arise under the contracts" were their execution and the answer to

them, if the plaintiff was able to make any. These issues are entirely distinct from the extent of Piper's injury, the negligence of the defendants' servants as its cause, his care, and the validity of the special release, all of which appear to have been properly determined. The situation appeared specially adapted for the application of the doctrine of *Lisbon* v. *Lyman*, 49 N. H. 553, and the cases following it, by restricting the necessary further trial to the issues that had not been tried, which when decided would, with the other facts settled by the verdict, determine which party should have judgment. The difficulties discovered by counsel in the attempt to make further progress cast some doubt upon the wisdom of the suggested course, but they do not seem insuperable. Neither does it appear to be necessary to enter upon an extended examination of the doctrines of the burden of proof, duty to go forward, or the power of the court to order new trials, which have been argued at length by counsel. The self-evident proposition, that neither the plaintiff nor the defendants can be deprived of any rights in the trial of the issues now undetermined, by the error of the court in excluding the evidence, or by the restriction of the trial, will dispose of the questions. If the verdict were set aside, as it properly could be, and probably would be at the plaintiff's request, the plaintiff would be entitled to another trial as of right, in which he would not be confined to the evidence introduced at the former trial. If at the former trial the evidence had been ruled in and found unanswerable so far as it went as a bar, the plaintiff, if any evidence had been introduced to sustain the claim, could have gone to the jury upon the issue whether the defendants' personal negligence was a cause of the injury. The declaration charged the injury to the defendants' negligence. Under it, any evidence tending to prove such negligence would be competent, whether the doctrine of *respondeat superior* was or was not necessary for its application. The defendants claimed and asked the court to rule that the only question as to negligence that had been tried was that of the negligence of the defendants' servants. Assuming this to be so, it follows that there has been no trial of the defendants' personal negligence as a cause for the injury. The case is not one of a judgment upon a verdict which is conclusively presumed to include all grounds of action or defence. There can be no estoppel from a verdict or finding until judgment has been ordered establishing the truth and verity of the same. *Smith* v. *Belknap County*, 71 N. H. 203, 207; *Petition M. & M. R. R.*, 68 N. H. 570, 576; *Hunter* v. *Carroll*, 67 N. H. 262, 264; *Clough* v. *Moore*, 63 N. H. 111, 113. Not only has there been no judgment upon the verdict, but if the contracts are sustained, the verdict, so far as it establishes the negligence of

the defendants' servants, will be set aside or disregarded as immaterial. When it appears in advance of judgment that a material issue has not been tried or has not been determined, the issue must be tried unless the party asking such trial has in some way become estopped to set up the facts involved. While the course of the trial after the demurrer was sustained naturally gave prominence to the negligence of the defendants' servants, which it had been ruled was sufficient to support the action, nothing appears which would as matter of law estop the plaintiff from claiming that the defendants' negligence, as well as that of their servants, was cause for the injury.

The case stands upon the general issue. The allegations or admissions of the brief statement are not evidence for the plaintiff Consequently the plaintiff's case must be proved as if no brief statement were filed. *Solomons* v. *Chesley*, 58 N. H. 238; *Bump* v. *Smith*, 11 N. H. 48. If at the former trial the evidence had been admitted and found unanswerable as to negligence of the defendants' servants, to have gone to the jury the plaintiff would have been obliged to show that there was evidence of some other ground of action; and if evidence of some other ground admissible under the declaration were in the case, to entitle him to a verdict he must have caused the evidence to preponderate in his favor. Nothing has happened to change the situation. The plaintiff claiming the injury was caused by the defendants' personal negligence, if that issue is tried, must go forward and assume the burden of producing a preponderance of evidence, regardless of any admissions in the brief statement. There was no error in the submission of this issue. The defendants' exception is overruled.

In connection with this issue, the defendants asked the court to submit an issue as to Piper's care. This the court refused, upon the ground that that question had been determined, and the defendants excepted. Whether all or a part only of the issues in a case shall be tried at one time, and which shall be tried first, is ordinarily a question of fact for the trial court. *Owen* v. *Weston*, 63 N. H. 599, 605. By analogy, the determination in a partial retrial of what issues justice requires shall be retried is also largely a question of fact. While in a general way Piper's freedom from fault as the cause of his injury has been found, it may be, when the evidence upon which it is claimed the defendants were personally negligent is more fully presented, that a question as to Piper's want of care will be brought out which was not involved in the former trial. In such case, as in all actions of negligence, the burden will be on the plaintiff to prove his care. Whether such an issue will develop, and the extent of the inquiry necessary in view of what has been already decided, can only be determined

in the course of the trial and must be decided by the trial court as the trial proceeds. If the ruling is to be understood as meaning that no question of Piper's care could arise in the trial of the issue allowed, to that extent the defendants' exception is sustained.

5. It was ruled, subject to the plaintiff's exception, that the contracts between Piper and the Express Company were found to exist at the former trial, and that the jury should now treat them as existing facts. If the ruling is to be understood to mean merely that such proof had been given as would entitle the defendants to read the contracts to the jury, it was without error. If it can be construed to preclude the plaintiff from destroying the force of the contracts by competent evidence, to that extent there is error. Although excluded at the former trial as a bar to the action, the contracts were put into the case as having some tendency to support the validity of the release executed by Piper after the accident. The determination of the jury that the release was invalid does not of necessity include a finding that the contracts offered to support it are valid.

The plaintiff does not tender any issue of fraud or imposition as to these contracts, and it is inferred that no such claim is made. "When a party enters into a written contract, in the absence of fraud or imposition he is conclusively presumed to understand the terms and legal effect of it, and to assent to them." *Rice* v. *Company*, 2 Cush. 80, 87; *Brown* v. *Insurance Co.*, 59 N. H. 298, 307; *Durgin* v. *Express Co.*, 66 N. H. 277, 278. Unless there is evidence of fraud or imposition, there can be no question for the jury as to Piper's understanding of the terms of the contract. In the absence of such claim, the issue asked for as to Piper's understanding of the contract was properly refused.

The defendants' exception to the refusal to submit an issue as to the plaintiff's care is sustained in part. The other exceptions are overruled.

*Case discharged.*

BINGHAM AND PEASLEE, JJ., dissented from the conclusion in part 3, but concurred as to the rest: the others concurred.