Edmund V. BROWNE, Appellant

v.

R & R ENGINEERING CO., a Corporation of the State of Delaware.

No. 12687.

United States Court of Appeals
Third Circuit.

Argued Dec. 16, 1958.

Decided Feb. 18, 1959.

Theodore R. Mann, Philadelphia, Pa. (Maximillian J. Klinger, Philadelphia, Pa., on the brief), for appellant.

James P. Collins, Wilmington, Del. (John M. Metten, Wilmington, Del., on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This is an appeal from a judgment which denied the appellant compensation for certain services on the ground that the services were rendered pursuant to an agreement contrary to public policy and prohibited by Executive Order No. 9001.[1]

In his complaint against R & R Engineering Co., appellant Browne alleged that "from February, 1956 until October, 1956, plaintiff performed certain engineering and other services for defendant in connection with three quotations submitted to a contractor, by defendant,

---

1. Paragraph 5 of Title II of the Executive Order provides as follows:

"Every contract entered into pursuant to this order shall contain a warranty by the contractor in substantially the following terms:

"The contractor warrants that he has not employed any person to solicit or secure this contract upon any agreement for a commission, percentage, brokerage or contingent fee. Breach of this warranty shall give the Government the right to annul the contract, or, in its discretion, to deduct from the contract price or consideration the amount of such commission, percentage, brokerage, or contingent fees. This warranty shall not apply to commissions payable by contractors upon contracts or sales secured or made through bona fide established commercial or selling agencies maintained by the contractor for the purpose of securing business." 50 U.S.C.A.Appendix, § 611 note at 675, 676.

* * * ." He asked the court to award him compensation for these services on a quantum meruit basis. The answer admitted that the plaintiff had performed "certain" engineering services for the defendant but asserted that the full amount due for the services actually performed had been paid. The case was tried to a court sitting without a jury.

There is no significant dispute about the operative facts as developed in evidence and outlined in the opinion of the court. Appellant Browne knew that a private corporation performing certain work for the Atomic Energy Commission was about to seek bids for some subcontracts within the capacity of a small machine shop. R & R Engineering Co., then a partnership, was such a small enterprise. Through his friendship with one of the partners Browne aroused the interest of R & R in getting some of this new business. Browne agreed to utilize his acquaintances with persons and procedures in order to have R & R placed on the list of those to be invited to bid on certain types of defense contracts. He also undertook to help in preparing drawings, estimates and technical data required or useful in bidding. Later he was to help in the reorganization of the enterprise and to make unsuccessful efforts to obtain financing for its expansion. In the preliminary discussions the parties talked about Browne receiving $1000. and either a partnership interest in the business or a percentage of the gross amount of any contracts which should be obtained. However, there was never any definite agreement about the manner or amount of his compensation, although it was understood that payment for his services, other than certain drawings, would be contingent upon success in getting one or more government subcontracts.

Browne succeeded in having R & R placed on the list of eligible bidders and thereafter helped in the preparation of data for a particular bidding. However, R & R's bid was high and was not accepted. Somewhat later, without further intervention by Browne, another oppor-tunity arose to bid on other subcontracts. Again Browne prepared estimates and other data. This time R & R was the low bidder and obtained a series of contracts aggregating more than $280,000.

After these contracts were obtained the parties were unable to agree upon appellant's compensation for his sundry services. R & R sent him a check for $5,600. which he accepted as part payment only. This suit followed for the fair value of services, estimated by appellant at $27,241.65.

The court found that in all the circumstances 7½ per cent of the total contract price of $284,833. was fair compensation for Browne "who not only found the opportunity but, in addition, performed multiple services". [164 F.Supp. 317] While the court made no detailed finding elaborating these services, their nature and extent appears in the following testimony of Browne:

> " * * * I think there is a lot more work involved than just finder's fee work. A finder's fee, as I understand it, is merely procuring an opportunity to bid. But I went a lot further than that, I believe, in this case. I helped to develop the quotation, I wrote the quotations, and went to seek money, financing, finances, tried to develop a staff, looked into buying, procuring of material and labor and transportation and so forth."

The contention that this transaction offended public policy and violated Executive Order No. 9001 was not introduced into the case until the trial was nearing its end. Then, for the first time, defense counsel asserted and undertook to establish that the plaintiff's claim was in substance a claim for a contingent fee payable on obtaining a government contract and, therefore, illegal. The court permitted the defendant to add this tardily asserted affirmative defense of illegality, reasoning that it involved only a question of law and did not require additional proof. At the same time both parties were given an opportunity to

make whatever submission they should desire with relation to this issue. The court, though vindicating Browne of any misconduct, concluded, with an expression of regret, that the entire transaction was in violation of a very comprehensive public policy and, accordingly, denied any recovery. This appeal followed.

■ A judicially enforced public policy against contingent fees for obtaining legislation, government contracts and other public benefits long antedates Executive Order No. 9001. Tool Co. v. Norris, 1864, 2 Wall. 45, 17 L.Ed. 868; Trist v. Child, 1874, 21 Wall. 441, 22 L. Ed. 623. That Executive Order, however, has served as an authoritative statement of public policy against contingent fees in connection with the obtaining of defense contracts, with the result that the courts are agreed that any agreement which a government contractor is prohibited to make under the terms of Executive Order No. 9001 is contrary to public policy and unenforceable. Bradley v. American Radiator & Standard Sanitary Corp., D.C.S.D.N.Y.1946, 6 F.R.D. 37, affirmed 2 Cir., 1947, 159 F.2d 39; Le John Mfg. Co. v. Webb, 1955, 95 U.S. App.D.C. 358, 222 F.2d 48. Moreover, if the agreement of the parties is unenforceable, the prohibited result may not be reached through the assertion of a quantum meruit claim. Le John Mfg. Co. v. Webb, supra; cf. Sullivan v. Hergan, 1890, 17 R.I. 109, 20 A. 232, 9 L.R.A. 110.

In these circumstances our first question here is whether and to what extent the arrangement made by the parties offended the policy and the prohibition of Executive Order No. 9001. The district court noted to appellant's credit that he did not, in the words of the Executive Order, "solicit or secure" any contract, in the sense of negotiating with anyone or persuading anyone to award a contract to his principal. Instead, the contract was awarded by competitive bidding and there is no indication whatever that appellant made any approach to any person who participated in making the award. But it was his intercession with and representation to those authorized to list acceptable bidders which resulted in an invitation to R & R to bid. Thus, appellant dealt with persons who played a significant part in the total procedure of letting government contracts and obtained for R & R the status of eligibility which was the essential first step in obtaining a contract. And it is at least possible that appellant's prior dealings and friendly relationship with these persons may have made his representations on behalf of R & R persuasive. The only Court of Appeals which has considered such a service has found it a type of assistance in securing a government contract which may not, consistent with Executive Order No. 9001, be the subject of a contingent fee agreement. Mitchell v. Flintkote Co., 2 Cir., 1951, 185 F.2d 1008. We think this decision is sound, and we follow it.

However, as the district court found, there was much more to the services Browne bargained to render and did render than this obtaining of a listing. He performed technical work requiring engineering skill. He prepared estimates and other data. He worked on some administrative problems. All of these services were incidents of the internal functioning of the R & R enterprise and were performed in the shop and in the local community. True, most of appellant's work product was immediately useful in the preparation of bids. But none of it involved any dealing by appellant with those responsible for any aspect of the letting of public contracts. Indeed, there is nothing to indicate that the fact of appellant's participation in preparing such material was even known to any person concerned with the awarding of contracts.

■■ To us it seems clear that this work involved no more "soliciting or securing" a contract than would the work of a typist who put bids in final form, or a photographer who had taken pictures for submission in support of a bid, or even a bondsman who had supplied a performance bond. When both the language of Executive Order No. 9001 and

the evils of improper influence at which it aims are considered, it seems a proper conclusion that the performance of engineering, technical and administrative work involved in the preparing of cost estimates, bidding data and specifications on a contingent fee basis is not contrary to law or public policy. Valdes v. Larrinaga, 1914, 233 U.S. 705, 34 S. Ct. 750, 58 L.Ed. 1163; see Trist v. Child, 1874, 21 Wall. 441, 450, 452, 22 L. Ed. 623.

One substantial question remains. Were these shop services and the services concerning the bidder's list so integrated into one agreement for a single consideration that the illegality of any part of the undertaking must make all of it invalid? The answer depends principally upon whether the parties in their bargain fixed a single lump sum consideration for all that appellant was to do, including the obtaining of eligibility for bidding. If so, the court, refusing to remake the bargain, should regard the agreement to obtain an opportunity for bidding as tainting and invalidating the promise to pay a single lump sum for both that service and the other unobjectionable services. Trist v. Child, supra; Spalding v. Ewing, 1892, 149 Pa. 375, 24 A. 219, 15 L.R.A. 727. But a contrary result has been reached in cases where the consideration was an aggregate allocable among several services. Piper v. Boston & M. R., 1910, 75 N.H. 435, 75 A. 1041; Illinois Bankers Life Assurance Co. v. Brydia, 1937, 180 Okl. 436, 70 P.2d 73.

In the present case there was no lump sum agreed and no indivisible consideration simply because, as the court found, there was never a meeting of minds as to what or how much appellant was to receive for any or all of his services. The parties did reach a general informal understanding that appellant would be compensated for his services if R & R should succeed in getting government work. But no agreement was reached on the amount of compensation. If the parties had agreed upon a 10% commission for all that appellant was to do, it could have been said with reason that the promised single lump sum contingent fee was not divisible and that such a promise to pay must be enforced or invalidated as a whole. But here there was merely an understanding that appellant would be compensated, all parties then anticipating that they would later be able to agree upon a fair return for the work. Once the transaction is viewed this way, it becomes apparent that the computation of fair compensation for appellant's multiple services, whether undertaken by the parties or by a court, calls for the determination and aggregation of values of a number of different and distinct services. Indeed, only by approaching the transaction as thus divisible can a meaningful basis of compensation be reached. This process is not a variation of the bargain, but rather an essential of its implementation.

We are more readily persuaded to this analysis because of the court's finding that appellant exercised no improper influence and did nothing morally wrong in this entire matter. He was not even aware of the technical illegality of part of the bargain. All of this makes relevant the observation of the Supreme Court that "it is only because of the dominant public interest that one, who has had the benefit of performance by the other party, is permitted to avoid his own obligation on the plea that the agreement is illegal. * * * Detriment to the public interest will not be presumed, where nothing sinister or improper is done or contemplated". See Steele v. Drummond, 1927, 275 U.S. 199, 205, 48 S.Ct. 53, 54, 72 L.Ed. 238.

We hold that the undertaking, in consideration of a promised contingent compensation, to have appellee placed on a list of prospective bidders eligible for public contracts, and only that much of the matter in suit, is illegal. Appellant may recover on a quantum meruit basis for the other services which he performed as agreed for the benefit of appellee.

■ At the trial the appellant introduced testimony of experts indicating their judgment of fair total compensation for all that he did. Quite understandably, the court did not undertake to make any separate finding as to the value of services, exclusive of those relating to the bidder's list. Indeed, in view of the late introduction of the defense of illegality near the end of the trial and the court's ruling that this defense presented only a question of law requiring the taking of no further evidence, the importance of such a breakdown was not then apparent. In these circumstances, we think there should be a new trial, or such a partial new trial as the district court may deem necessary to determine the fair value of the services which are legally compensable under the analysis contained in this opinion.

The judgment will be reversed and the cause remanded for further proceedings consistent with this opinion.

BIGGS, Chief Judge (dissenting).

If it be the case—and I agree with the majority that it is—that what the appellant Browne did constituted the solicitation of Atomic Energy Commission contracts within the purview of paragraph 5 of Title II of Executive Order No. 9001, I do not see how the services rendered by Browne can be broken down into two categories: Services for which he can be compensated legally and services for which he cannot because of the Executive Order and the decisional law. Mitchell v. Flintkote Co., 2 Cir., 1951, 185 F.2d 1008.

As I read the record, substantially all of the services rendered by Browne for which he presently seeks compensation, were rendered by him in attempts to procure Atomic Energy Commission contracts for R & R.

The principle enunciated by the majority seems an unfortunate one for it will be an unusual case where the ingenuity of counsel and the imagination of a plaintiff will not be able to cull out services which, it can be asserted, were not rendered in connection with the solicitation or procurement of a government contract. In my opinion if the majority view prevails the salutary effect of the Executive Order and of the decisions interpreting it will be practically abrogated. For these reasons I must respectfully dissent.