**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Richard Anthony WEBBER and Robert J. DuHadaway, trading as R. & R. Engineering Company,**
**and**
**R. & R. Engineering Company, a corporation of the State of Delaware,**
**Defendants.**

**Civ. A. No. 2815.**

United States District Court
D. Delaware.

June 22, 1967.

Alexander Greenfeld, U. S. Atty., Wilmington, Del., and Stephen R. Felson, Dept. of Justice, Washington, D. C., for plaintiff.

Wanda Chocallo, Philadelphia, Pa., and Harold Leshem, Wilmington, Del., for Richard Anthony Webber and R. & R. Engineering Co.

Courtney H. Cummings, Jr., of Killoran & Van Brunt, Wilmington, Del., for Robert J. DuHadaway.

## OPINION

LAYTON, District Judge.

The United States, as assignee of Swinerton & Walberg (Swinerton), brings this action to recover for breach of warranty of contracts awarded by Swinerton to R. & R. Engineering Company (R. & R.). The defendants are Richard Anthony Webber (Webber) and Robert J. DuHadaway (DuHadaway),

trading as R. & R. Engineerign Company, a partnership, and R. & R. Engineering Company, a Delaware corporation. The United States has filed a motion for summary judgment. The defendant Du-Hadaway has filed a cross-motion for summary judgment.

This action is an outgrowth of Browne v. R. & R. Engineering Co., 164 F.Supp. 315 (D.Del.1958), rev'd in part, 264 F.2d 219 (3d Cir. 1959). In that case, Edmund V. Browne sought to recover compensation for services rendered to R. & R. in helping them secure government contracts (the same contracts which are the subject of the instant litigation) in connection with the construction of Atomic Energy Commission facilities in Colorado.

In *Browne,* after hearing testimony,[1] this Court found, *inter alia,* that Browne had in fact rendered services to R. & R. in this connection, and that his compensation from R. & R. had been contingent upon their obtaining a government contract. Such contract (actually a subcontract) was awarded to R. & R. by Swinerton & Walberg, the prime contractor for the AEC facilities. Adopting the defendant's contention, this Court determined that Browne could not enforce his fee arrangement with R. & R. for the reason that such contingent fee arrangement was illegal and unenforceable as against public policy by virtue of Executive Order 9001, 50 U.S.C. Appendix § 611 (1941).[2] Such contingent fee arrangement was similarly prohibited under the express terms of the Swinerton & Walberg contract with R. & R.

The Third Circuit Court of Appeals reversed in part finding the contract severable and holding that Browne could recover, in quantum meruit, for certain services rendered to R. & R. unconnected with the actual solicitation for the government contract. On remand, in an unreported opinion dated July 21, 1959, this Court found that Browne had previously received from R. & R. the value of those other services, and judgment was rendered for the defendant.

■ The rationale underlying Executive Order 9001 is twofold: (1) to prevent improper conduct in obtaining government contracts as well as (2) to prevent the government being overcharged by the addition of the commissions or contingent fees to the contract price. Browne v. R. & R. Engineering Co., 264 F.2d 219 (3d Cir. 1959); J. D. Streett & Co. v. United States, 256 F.2d 557 (8th Cir. 1958). Accordingly, the United States, as assignee under the contract between Swinerton and the defendants, now brings suit to recover from the individual defendants or R. & R. (Corporation) or both, that amount found due by this Court under the contingent fee agreement, but uncollectible by Browne because prohibited by public policy.[3]

1. Webber and DuHadaway, both of whom appeared at the *Browne* trial and testified, did not deny that they had entered into a contingent arrangement with Browne or that he had rendered substantial services. The defense was that the amount claimed was excessive and, at the very last day of the trial, that Executive Order 9001 barred recovery upon such contingent fee contracts as against public policy.

2. Paragraph 5 of Title II of the Executive Order provides as follows:

"Every contract entered into pursuant to this order shall contain a warranty by the contractor in substantially the following terms:

"The contractor warrants that he has not employed any person to solicit or secure this contract upon any agreement for a commission, percentage, brokerage, or contingent fee. Breach of this warranty shall give the Government the right to annul the contract, or in its discretion, to deduct from the contract price or consideration the amount of such commission, percentage, brokerage, or contingent fees. This warranty shall not apply to commissions payable by contractors upon contracts or sales secured or made through bona fide established commercial or selling agencies maintained by the contractor for the purpose of securing business."

3. "It would seem not unjust or unreasonable to measure the harm done to the government because of the payment of a contingent fee * * * by the amount

The United States submits that all the necessary facts, which are undisputed, are now before the Court, and that it is entitled to judgment as a matter of law. The defendants resist on the basis that factual issues exist but it is of critical importance to note that none of them has filed any affidavits or introduced anything else into the record, as required by Rule 56, which demonstrate the existence of any factual issue.[4]

The government did not file affidavits in support of its motion for summary judgment. However, the contracts between R. & R. (Partnership and Corporation) and Swinerton and the United States were attached to the complaint. Moreover, in paragraphs 7 and 8 of the complaint, the plaintiff recited the suit of Browne v. R. & R. Engineering Co., C.A. No. 1873, filed in this Court, the findings of fact, conclusions of law and opinion of this Court, the appeal to the Circuit Court and its modifying opinion, 264 F.2d 219, as well as this Court's unreported decision pursuant thereto dated July 21, 1959, all matters of record in this Court.

No citation is needed for the proposition that under Rule 56, summary judgment can be granted only if there is no question of fact to be resolved. To determine whether any such factual issue exists, the Court may consider any of a number of kinds of material put before it. See 6 Moore's Federal Practice, § 56.11, p. 2143 et seq. In this case, the Court is asked to consider the contracts in question and the Swinerton assignment to the United States, certified copies of which have been made a part of the record, and in addition, to take judicial notice of the facts found in the *Browne* case.

Matter which is the subject of judicial notice may properly be used in the consideration of a motion for summary judgment. Ellis v. Cates, 178 F.2d 791 (4th Cir. 1949), cert. den. 339 U.S. 964, 70 S.Ct. 999, 94 L.Ed. 1373 (1950); Daley v. Sears, Roebuck & Co., 90 F.Supp. 562 (N.D.Ohio 1950); 6 Moore's Federal Practice, § 56.11 [9], pp. 2207–08. In this Circuit, it is clear that a District Court may take judicial notice of the records of prior cases in its own court. United States v. City of Philadelphia, 140 F.2d 406, 408 (3d Cir. 1944); Hassenplug v. Victor Lynn Lines, 71 F.Supp. 70 (E.D. Pa.1947), aff'd 163 F.2d 828 (3d Cir. 1947). Cf. National Fire Ins. Co. v. Thompson, 281 U.S. 331, 336, 50 S.Ct. 288, 74 L.Ed. 881 (1929). Therefore, the record and opinions of the *Browne* case are properly to be considered by this Court on plaintiff's motion for summary judgment.

### I. UNCONTRADICTED FACTS

It cannot be disputed, then, that in *Browne*, this Court necessarily and specifically found that a contingent fee agreement had been entered into by Browne and the R. & R. partnership, in connection with the procurement of Swinerton's contracts. 164 F.Supp. at 316; 264 F.2d at 221. It is clear, in addition, that the contingent contract was agreed to by R. & R. when it was a partnership and, thus, the individ-

---

of the fee * * *." J. D. Streett & Co. v. United States, 256 F.2d 557, 559–560.

4. The defendants seem to take the position that either the Court did not find the facts it did in *Browne* or that this Court erred there in its findings. However, it is clear from a reading of the *Browne* opinion (those of this Court and the Third Circuit Court of Appeals) just what facts this Court found, and it is similarly clear from a re-examination of the record of the *Browne* case that such facts were supported by substantial, if not overwhelming, evidence. This is hardly the time or place to attack such findings of fact made eight years ago by this Court. Thus, the quarrel of the defendants with the facts found in *Browne* simply does not and cannot raise any issue of fact here. It is also curious to note that the defendants here seek to reject the existence of the original contingent fee agreement and its invalidity against public policy, which are the very grounds upon which the R. & R. Corporation successfully defended in *Browne*.

ual defendants were parties thereto and liable thereunder for any warranty that was breached. R. & R. was not incorporated until April 23, 1956, which was several months after Browne began working with the R. & R. partners in the government contract bidding venture, and well after the contingent fee arrangement had been agreed to. 164 F.Supp. at 316; 264 F.2d at 221. It also cannot be disputed that the original contract between Swinerton and R. & R. was entered into while R. & R. was a partnership. It is dated April 4, 1956, several weeks before incorporation. Thus, it was R. & R., as a partnership, and the individuals comprising the partnership, that warranted to Swinerton that it had not entered into a contingent fee arrangement to secure the award of the contract; and it was R. & R., as a partnership, and the individuals comprising the partnership, that entered into the contingent fee arrangement with Browne. Finally, it is uncontroverted that after R. & R. was incorporated, the corporation assumed the duties and obligations of the contract, performed the work, and was fully paid by Swinerton.

■ All of the foregoing facts are clear from the record of the *Browne* case, its testimony and exhibits, and the reported opinions of two courts. It must again be emphasized that these facts have not been rebutted in any way by any of the defendants. The defendants, particularly Webber and R. & R. Corporation, seem to rely on the denials of their pleadings to create factual issues which would preclude the grant of summary judgment to the plaintiff. It is clear, however, that such denials alone are completely insufficient to put facts into controversy. Rule 56(e), Federal Rules of Civil Procedure.

To complete the record, the United States has placed in the record here a certified copy of the assignment to it of Swinerton's rights under its contracts with R. & R.[5] The validity of the assignments has not been challenged by any of the defendants. Indeed, the United States had the express right under its (prime) contract with Swinerton (Article VII, Paragraph 4) to such assignment; this prime contract is also a part of the record here.

The undisputed facts before the Court thus clearly establish that there was a contingent fee arrangement between R. & R. (partnership) and Browne in breach of the warranty in the R. & R. (partnership)—Swinerton contract. The United States, as assignee to Swinerton's rights under the warranty, is entitled to enforce those rights against R. & R., both the corporation and the partnership.

## II.  LIABILITY OF THE PARTNERSHIP

■■ Even though it was not a party to the *Browne* case, the facts found there (which are uncontroverted here) indicate that the partnership and the individual parties are liable under the contract warranty. The incorporation of a partnership cannot affect the rights and liabilities of the partnership under contracts made prior to incorporation, unless by a binding agreement among the parties. 18 C.J.S. Corporations § 143(2). Defendants have failed to introduce anything into the record to show that Swinerton agreed to release the partnership from its contingent liability; similarly, there is nothing to indicate such a release by Browne. Nevertheless, the defendant DuHadaway argues that, since the partnership was not a party to the *Browne* case, and the Court, therefore, did not find any liability on the part of the partners, no summary judgment can be granted to the plaintiff here. This argument is not to the point. The *facts* found in *Browne* showed that the *partners* made a contingent fee arrangement with

---

5. The first contract was executed on April 4 while R. & R. was still a partnership. Subsequent contracts, which are merely continuations or amendments of the original contract, were entered into after April 23rd, when R. & R. was incorporated.

Browne in breach of the contract the *partners* made with Swinerton. These *facts*, uncontraverted here, indicate a breach of warranty; the United States, as assignee to the rights under the warranty, is entitled to enforce its rights on this motion for summary judgment against the individual partners. Thus, though no attempt was made in *Browne* to hold the individual defendants liable, the facts necessarily found in that action, *standing uncontradicted in this motion*, require a finding of liability here.

In reaching its decision, this Court is not relying upon a theory of collateral estoppel. Rather, it is simply examining the facts before it, and finds that such facts are uncontradicted, and further finds that certain legal consequences follow.

### III. LIABILITY OF THE CORPORATION

The R. & R. Corporation is also liable for the breach of warranty. The uncontradicted evidence is that the Corporation assumed the contract in question, performed the work, and was paid by Swinerton therefor. Under general principles of corporation law, it is deemed to have adopted the contract, including the liabilities and warranties. United States v. Beaver Run Coal Co., 99 F.2d 610, 613–614 (3d Cir. 1938); Frantz Equipment Co. v. United States, 105 F.Supp. 490, 492, 122 Ct.Cl. 622 (1952); 18 C.J.S. Corporations § 143(1).

### IV. DAMAGES

As has been noted several times in passing, there are several Swinerton-R. & R. purchase orders in question

here, one of which was executed before the incorporation of R. & R., the others after.[6] However, the subsequent purchase orders were called change orders, were merely additions to the first order, and each specifically incorporated the terms and provisions of the first.[7] Thus, it is fair to say that the original purchase order and the change orders can be considered as one contract. This is consistent with the second opinion of this Court, July 21, 1959, p. 6, where it was stated: "The total contract price came to $284,783." At that point, the Court had before it only two of the change orders.[8] In the record of this case are five change orders, which together amended the original contract to a total contract price of $325,489.

With this in mind, the question of damages is easily resolved. The warranty itself sets the measure of damages, the amount of the illegal contingent fee; that this measure is appropriate is well settled. United States v. J. D. Streett & Co., 151 F.Supp. 469 (E.D.Mo.1957), aff'd 256 F.2d 557 (8th Cir. 1958); United States v. Paddock, 178 F.2d 394 (5th Cir. 1949), rehearing denied 5 Cir., 180 F.2d 121, cert. den. 340 U.S. 813, 71 S.Ct. 41, 95 L.Ed. 597 (1950). This Court in *Browne* found that, but for the illegality of the contingent arrangement, Browne was entitled to a fee of 7½% of the total amount of the contracts awarded because of his efforts. 164 F. Supp. at 317. These contracts totalled $325,489.00. The amount of the contingent fee, therefore, was $24,411.68.

The United States is entitled to recover the amount of the illegal con-

---

6. It has been noted that the copies of the purchase and change orders before the Court do not appear to be signed by R. & R. or anyone connected with R. & R. However, the following provision is found on each order: "Vendor's acknowledgement copy of this order must be signed and returned to P. O. Box 1019, Denver Colo. No invoice will be passed for payment unless acknowledgement copy has been executed and returned." Since R. & R. was paid for its services by

Swinerton, it follows that it must have returned a signed copy to them.

7. Each change order contains the following language: "All the terms and conditions of the original purchase order and subsequent changes remain the same."

8. Only two of the change orders were put in evidence in *Browne* by the plaintiff there, who apparently was unaware that there existed additional change orders.

tingent fee, even though it was not paid, 35 Comp.Gen. 470; the critical factor is the presence of the contingent fee arrangement.

As there is no issue of fact to be resolved and the facts clearly show that the plaintiff is entitled to recover, plaintiff's motion for summary judgment in its favor against all defendants is granted. The plaintiff shall recover the sum of $20,411.68,[9] plus interest from the date of the breach of warranty, April 4, 1956, the date of the first Swinerton-R. & R. contract, J. D. Streett & Co., v. United States, 256 F.2d 557, 561 (8th Cir. 1958), *supra*. The motion for summary judgment by the defendant Du-Hadaway is denied.

Counsel will submit an order in conformance with this opinion.

9. This is calculated by subtracting from the contingent fee $4,000 which the plaintiff is willing to credit as money paid to Browne legally earned. This Court, in its opinion following remand from the Third Circuit Court of Appeals, actually found that only $3,000 had been legitimately earned by Browne. The Court is willing to give the defendants the benefit of the plaintiff's generosity in understating the amount of damages.