H. RIKER TURNURE, complainant-respondent,

*v.*

JULIA TURNURE, individually and as executrix, defendant-appellant.

[Argued March 6th, 1918.   Decided June 17th, 1918.]

A testatrix gave certain lands to her executors in trust to hold the same and pay the income to her son during his natural life with remainder to his lawful issue, and in default to her daughter, the executrix of her will,

subject to the condition that if her son should live to the age of forty years and at that time be not embarrassed with debt and competent to prudently manage his own affairs, of which her executor should be the sole judge, then she was authorized and empowered to convey the property to the son. When the son reached that age he applied for the conveyance and the executor, or trustee, refused upon the ground that he was not then competent to manage his own affairs.—*Held*, that her determination of the question was final if the judgment exercised by her was sound and honest, and that, under the proofs submitted, the exercise of her discretion that the son had not become competent to prudently manage his own affairs, was not unsound, or exercised for selfish and improper motives.

On appeal from the court of chancery.

*Mr. James S. Erwin, Mr. Maximilian T. Rosenberg* and *Mr. James F. Fielder*, for the appellant.

*Mr. David D. Ackerman*, for the respondent.

The opinion of the court was delivered by

BERGEN, J.

The complainant filed this bill to compel Julia Turnure, Charles P. Buckley and William W. Buckley, as executors of the will of Mary J. Turnure, and Julia Turnure, individually, to execute a trust contained in the will of Mary J. Turnure. The testatrix devised, among other lands and personal estate, two parcels of land sufficiently described for the purposes of this suit as the "Closter Farm" and "Tenafly Residence," to her executors, in trust to permit her son, the complainant, during his life, or so long as he chose to do so, to occupy the same, or if he ceased to reside there then to let the property and pay the rent to him during life and thereafter to convey it to his descendants, or in default to Julia or her heirs if she be not living. The will further provided that if her son should live to be forty years of age, "and at that time shall not be embarrassed with debt, and competent to prudently manage his own affairs, of which my executors or the survivors of them shall be the sole

judges," then they were authorized to convey to the son these lands and other property and the trust should be terminated.

Julia Turnure was named as executrix and Charles P. Buckley and William W. Buckley to succeed her as executors after her death : she proved the will, qualified as executrix and is still alive, so that neither of the other nominees have been required or authorized to qualify.

The will further empowers the executors to sell the real estate during the lifetime of her son, or during the minority of any of his descendants, and to invest the proceeds of such sale which are to be held under the same trust as the land, with the proviso that no sale thereof shall be made while the son resides on the farm without his written consent. The son, claiming to have attained the age of forty years, not being embarrassed with debt and competent to prudently manage his own affairs, applied to the executrix and trustee to convey to him the land in controversy, which she refused to do, and thereupon this bill was filed to compel the conveyance, and the advisory master, to whom the case was referred by the chancellor for his advice, found that the defendant, in refusing to execute the deed to her brother, exercised a discretion confided in her, for selfish and improper motives and *mala fide,* and advised a decree that she make the conveyance from which she has appealed.

The latest deliverance by this court on the legal aspect of the right of a court of equity to compel a trustee to exercise a discretion favorable to the *cestui que trust,* is to be found in *O'Gorman* v. *Crowley, 81 N. J. Eq. 520,* where the execution of the trust was authorized whenever, in the opinion of the executrix, the mental and physical condition of the legatee was such that he was competent to attend to his affairs, without the additional words, as in this case, "of which my executors or the survivors of them shall be the sole judges." In that case this court said: "Whether the son's mental and physical condition should improve to the extent indicated was a matter which required an exercise of judgment on the part of someone. The testator, as he had a right to do, selected the executors named in his will as the persons who should exercise that judgment. Their determination of that question was final if the judgment exercised by

them was a sound and honest one." Therefore, in the case under consideration, the only question remaining is whether the advisory master properly determined the facts to which this rule of law should be applied.

At the time of the mother's death the defendant was living with her brother on the farm, and within a few months thereafter he married and brought his wife, Ida Turnure, to the farm, and shortly thereafter the defendant left her brother's residence and since that time has resided elsewhere.

The executrix settled her account in the orphans court as executrix and also filed an intermediate account of the rent from the Tenafly house and of other property held in trust, and no dispute is raised as to the accounting.

The mother died November 24th, 1901, and the will was dated October 4th, 1898. In 1904, nearly three years after the mother's death, the complainant filed his petition with the orphans court of Bergen county praying the appointment of a suitable person, in the place of the defendant, Julia Turnure, "to execute the trust declared in the will," and on the 8th day of August, 1904, the orphans court appointed William C. Herring in the place of Julia Turnure, she consenting thereto, "to execute and complete the trust created and declared in the said will," which appointment was accepted by the appointee who executed the trust until the 20th day of December, 1905, on which date the orphans court discharged him from all further duties as trustee and appointed Ida Turnure, the wife of the complainant, as trustee in his place. On the 9th day of December, 1916, Ida Turnure, "as substituted trustee," conveyed the lands in question to Ethel H. Cosgrove, the consideration stated being $25,000; the grantee was a stenographer in the office of the counsel of the complainant. She testified that she paid the consideration by a check on a bank, but that the money was given to her by the counsel who was making this transfer, from which it is quite apparent that the grantee paid nothing out of her own funds for the transfer to her, and her part in the transaction was that of a conduit to transfer the title, for on the same day she executed a deed for the same lands to the complainant and Ida, his wife.

Whether these conveyances passed the legal title to the complainant and his wife, in view of the fact that the power of sale contained in the will is given to the executrix, in the exercise of a special trust and confidence, the gift in the will being to them, or whether a substituted trustee, who was not appointed executor, could convey the legal title, it is not necessary to determine.

What the parties have attempted to do is, not to transfer the title to the son as directed by the will, but to the son and his wife, so that if the conveyance be good the son's ultimate acquisition of the entire title to the property depends upon his surviving his wife. When this will was made the son was about twenty-eight years of age, and it is quite apparent from the testimony, and the act of the testatrix in putting this land in trust for the use of her son, she did not then consider him a competent person to prudently manage his own affairs, and it was also apparent that not having changed her will in the meantime she continued of the same opinion until her death, and that it was her intention to provide a trust fund for the maintenance of her son during his life which he should not be able to dissipate.

It is not necessary in this opinion to repeat the testimony, but we are quite satisfied from it that the conduct of the son up to the time of his mother's death justified her apprehension that he was not then competent to manage his own affairs with prudence, and for that reason she intended to leave his share of her property in such a condition as to provide him a maintenance during life.

What the son is undertaking to do, possibly under the influence of his wife, is immediately to put one-half of his property beyond his control, and perhaps deprive his children, if he should have any, of their reversionary right under the will, and if he leave no children, to pass the estate out of the blood of the testatrix.

There is not a particle of evidence in the case which would justify any inference that the habits or prudence of the complainant is any different from what it was when his mother died; on the contrary, an inference is permissible that his wife is the stronger character of the two, and that she has induced him to

join in a scheme to presently deprive himself of one-half of the property, and, possibly, the whole.

We do not think that with these conditions present the defendant's exercise of her discretion not to convey, she being made sole judge whether she should or not, was unsound or dishonest, for, as was said in *O'Gorman* v. *Crowley, supra:* "The fact that the judgment of others upon the question of the mental and physical condition of the son differed from that of the executors, is quite immaterial, for it was not upon their judgment but upon that of the executors that the testator saw fit to rely." In addition to the fact that, apparently, the ability of the son to act with prudence as to his property has not been altered since his mother's death, which would be a strong reason why the defendant should preserve the property for the use of the son as his mother intended, is the additional one that his present intention as to the disposition of the property contrary to the manifest wish of the mother to protect him against just such acts, is a strong indication that he is not yet qualified "to prudently manage his own affairs."

We do not think that the advisory master was justified by the proofs in the case in finding that the defendant refused to exercise her discretion, as committed to her by the will, "for selfish and improper motives and *mala fide.*"

The fact that if the complainant should die without issue, the defendant or her heirs will take the property, is not of itself sufficient to sustain a charge of unsound or dishonest motive, for the discretion was committed to her by the mother with full knowledge of all the circumstances. She trusted the defendant to see that the property was held for the benefit of her son and to prevent its being taken from him unless she, the defendant, was satisfied that he had so improved as to manage it prudently. She had confidence in her daughter, and made her the sole judge, and that confidence ought not to be usurped by the court unless the evidence preponderantly shows that it is being abused. This case is almost, if not entirely, a question of fact, and we conclude that under the testimony the daughter is acting in good faith and not *mala fide.*

The decree below will be reversed and the bill dismissed, with costs.

*For affirmance*—KALISCH, BLACK, GARDNER—3.

*For reversal*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR—10.