## SUNDERLAND v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8839.

Circuit Court of Appeals, Third Circuit.

Argued May 17, 1945.

Decided Sept. 28, 1945.

Montgomery B. Angell, of New York City (George Craven, of New York City. on the brief), for petitioner on review.

Muriel S. Paul, of Washington, D.C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to the Atty.Gen., on the brief), for respondent.

Before DOBIE, GOODRICH, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Petitioner, her husband and their two children are residents of New Jersey. In 1934 the husband created two identical trusts in favor of the children. Article 1, referring to income, says: "1. To collect and receive the rents, interest, income and dividends thereon, hereinafter referred to as income, and to pay or apply the net income therefrom, after deducting all proper charges and expenses to or for the use of Joan Sunderland during her natural life." The principal of the funds

is covered by Article 2 which provides that on the death of the particular child the principal is to be paid over to his or her descendants and if no such descendants then living, to the descendants of the grantor. Article 3 reads: "During the minority of Joan Sunderland, the Trustee may apply the net income from the trust fund for her use and benefit as directed by Dorothy Kissel Sunderland, mother of Joan Sunderland, or pay the said income direct to her, and the Trustee shall be under no obligation to see that proper application is made of the income paid as directed by or paid to the said Dorothy Kissel Sunderland. During the lifetime of Dorothy Kissel Sunderland, the Trustee may pay or apply to or for the use of Joan Sunderland so much of the principal of the trust fund as Dorothy Kissel Sunderland shall direct, and after her death as the Trustee shall in his absolute and uncontrolled discretion determine. The Trustee in his absolute and uncontrolled discretion, or upon the direction of Dorothy Kissel Sunderland, may accumulate any surplus income during the minority of Joan Sunderland until she shall attain the age of twenty-one years, at which time such surplus income shall be paid to her absolutely. All accumulations of surplus income, if any, shall be invested by the Trustee pursuant to the terms of this agreement, as though the same constituted principal of the trust created hereunder."

In 1935, 1936 and 1937 the petitioner transferred and delivered to the trustee certain securities of her own with memorandums stating: "Please hold the certificates covering the above mentioned shares of stock as trustee under the above mentioned trusts." There is no provision in the original agreements as to any person other than the grantor contributing to the trusts. During 1940, the tax year in question, the trustee received $1,382.50 income from the securities transferred to the trusts by the grantor and a like sum from those transferred by the petitioner. At the petitioner's direction, the trustee paid over to her the entire amount received by the trusts that year. This was deposited by the petitioner in her personal bank account. She admittedly expended in excess of one-half of that amount for the use and benefit of each child. The income from the securities transferred by the father was included in his gross income for federal income tax purposes. The income from the securities transferred by the mother was included in the gross income of the respective beneficiaries of the trusts. The father at the time the trusts were created, and at all times since, has been financially able to provide for the support, maintenance and education of the children. The Commissioner acting under Section 22(a) of the Internal Revenue Code,[1] included in the petitioner's income the income from the securities she had transferred to the trusts. The Tax Court upheld that view, four judges dissenting.

Though counsel for the respondent, like the Tax Court in its opinion, hesitates to characterize petitioner's action with respect to her securities as creating a trust, he assumes that to be the situation and then argues, as held by the Tax Court, that "The provisions of the indentures were such that the income from petitioner's securities remained her income during the minority of each child, for all practical purposes." If that is so, obviously the decision of the lower court should be affirmed.

■■ We find no difficulty in concluding that Mrs. Sunderland established a trust by her transfer and delivery of her securities and by her memorandums to the trustee under her husband's indentures. We agree that the trust set up by Mrs. Sunderland is governed by the terms of the husband's agreements. Under the first paragraphs of those documents the trustee is to pay or apply the net income direct to or for the use of the children during their respective lives. Under the third paragraphs, during the minority of each child, the trustee may apply the particular net income from the trust fund for the

---

[1] Internal Revenue Code:

"Sec. 22. Gross income. (a) General definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * *, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * * *" 26 U.S.C.A. Int. Rev.Code, § 22(a).

use and benefit of each child as directed by Mrs. Sunderland or he may pay the income direct to her. In either of those events the trustee "shall be under no obligation to see that *proper application* is made of the income paid as directed by or paid to the said Dorothy Kissel Sunderland." (Emphasis ours.) We think the meaning of the above is unmistakable. The income from the trusts is for the use and benefit of the children. If the trustee allows the mother to disburse the income during the children's minority (which he did) the trustee is excused from responsibility for the proper application of the income by the mother. This latter provision, however, certainly does not exempt the mother from adhering to both the specific language of the agreements and the sole thought behind them as far as income is concerned, namely, that the income is for the use and benefit of the children.

It is specious to suggest that following Mrs. Sunderland's transfer of her securities, her control over the income thereof and her economic advantages therefrom were exactly the same as before. Acting under the terms of her husband's agreements, Mrs. Sunderland made an outright grant of the securities to the trustee for the use and benefit of the children. She completely divested herself of ownership. She had nothing remaining in the property which she could dispose of by will and on her death the securities would not be part of her taxable estate. With the trustee's assent she did have a discretion in the disbursement of the income but only as to how she spent it for the use and benefit of the children. She had no right to divert a penny of it from that purpose. With the trustee's permission she could direct that surplus income be accumulated during the minority of the children to be paid to them at the age of twenty-one; also, with the approval of the trustee, she could direct so much of the principal as she wished to be paid or applied to or for the use of the children. Those provisions simply gave Mrs. Sunderland further discretion, subject to the trustee's approval, in the handling of both the income and principal for the children. They cannot be fairly construed as authorizing, or even permitting, Mrs. Sunderland to exercise any rights of ownership in the securities. The expression of the Court in In re Jennings' Guardianship, 91 N.J.Eq. 488, 110 A. 563, is appropriate in this connection though that case had to do with a testamentary bequest. The Vice Ordinary there said at page 490 of 91 N.J.Eq., at page 564 of 110 A.: "The fact that, having made a bequest of the income directly to the children, testatrix in connection therewith directed the payment of the income to their mother, or other legal guardian, for their benefit, does not, as claimed, change the nature of the bequest or the beneficiaries of the gift, and does not take from the children their bequest and give it to their mother coupled with some undefined duty toward them."

The latitude allowed the mother in choosing the expenditures for her children, under the plain wording of the agreements, is subject to the consent of the trustee and is in nowise unusual. From all that appears we are dealing with a normal American family group where the mother supervises the home and the children. The findings of fact show that Mrs. Sunderland's disbursements for the children amounted to more than the trust income and embraced items for tuition, clothes, medical charges and travel. A separate bank account for the trust funds and a formal record of expenditures might have helped Mrs. Sunderland in more readily establishing her position but their absence gives no impression that her unequivocal grant of her securities was meaningless. Mrs. Sunderland had ample personal funds. She could and no doubt did reasonably assume that there was no need of meticulous bookkeeping as long as she continued the type of ordinary common sense disbursements shown to have been actually made by her and with those disbursements amounting to more than the trust income.

That the original agreements did not affirmatively provide for payments to the trusts by anyone other than Mr. Sunderland is unimportant for both the grantor and the trustee as long ago as 1935 seem to have acquiesced in Mrs. Sunderland's transfer of the securities to the trusts. It is of some significance that despite the charge that petitioner's domination of her securities remained unchanged for practical purposes after transfer, there is no attempt to attribute ownership to her of the income from the funds her husband transferred to the trusts and over which she had exactly the same powers as she possessed over the income from the securities she herself had turned over to the trusts.

We disagree with the contention that there was no restraint on how Mrs. Sunderland should either use or permit the accumulation of the income for the children. While she was not the named trustee, she necessarily functioned in a fiduciary capacity with respect to the funds and is so accountable. The family relationship does not change this. As said in Wood v. Rabe, 96 N.Y. 414, at pages 426, 427, 48 Am.Rep. 640: "The rule governing dealings between persons standing in fiduciary relations is applicable to parent and child, and courts carefully scrutinize them, to protect the latter against any undue advantage being taken by the former."

Nor does the fact that it was petitioner's own property which she gave to the trusts change the governing equitable standards. On this, the late Justice Cardozo, then Judge of the New York Court of Appeals, in Carrier v. Carrier, 226 N.Y. 114 said at 125, 126, 123 N.E. 135, at page 138: " * * * It is true that the creator of this trust had reserved to himself the broadest rights of management. His discretion was to be 'absolute and uncontrolled.' That does not mean, however, that it might be recklessly or willfully abused. He had made himself a trustee; and in so doing he had subjected himself to those obligations of fidelity and diligence that attach to the office of the trustee. He had power to 'invest' the moneys committed to his care. He had no power, under cover of an investment, to loan them to himself. His discretion, however broad, did not relieve him from obedience to the great principles of equity which are the life of every trust. Globe Woolen Co. v. Utica G. & El. Co., 224 N.Y. 483, 121 N.E. 378; Munson v. Syracuse, G. & C. R. Co., 103 N.Y. 58, 8 N.E. 355."

New Jersey will not support an unfair use by a fiduciary of discretionary powers. Hardenburgh v. Blair, Err. & App. 30 N.J.Eq. 645, at page 654; Lembeck v. Lembeck, 73 N.J.Eq. 427, at page 433, 68 A. 337. We do not see that Brown v. Commissioner, 3 Cir., 131 F.2d 640 certiorari denied 318 U.S. 767, 63 S.Ct. 760, 87 L.Ed. 1138, and Commissioner v. Buck, 2 Cir., 120 F.2d 775, cited by the respondent, are in point. In the former decision the settlor retained the power to change both the beneficiary and proportion of the income payable to any beneficiary except that such changes could not benefit the settlor. In the latter, the grantor reserved the right to change in any respect whatsoever the provisions of the trust relating to "the disposition of the income and principal of the trust estate or the separate shares into which the same may be divided and to change any beneficial interest" under the trust, although by such changes the grantor could not himself benefit.

The present matter is quite comparable to Commissioner v. Grosvenor, 2 Cir., 85 F.2d 2. There the settlor established two trusts, one for each of his two infant daughters. The terms of the trusts provided that the trustee pay the net income to the settlor's wife "to be expended by her for the support, maintenance and education" of the daughter named therein during her minority, "without any liability upon" the wife "to account for the expenditure of said income to any person." The grantor attempted to avoid paying tax on the income of the trusts on the same ground as now urged by the respondent, namely, that the income was in effect the wife's. The Court held page 3 of 85 F.2d: "Mr. Grosvenor, being admittedly under a legal duty to support his minor children, was directly benefited by the payments of trust income which discharged that duty. Under the foregoing authorities, such income must be taxed as his. He attempts to distinguish them on the ground that here the income was paid to Mrs. Grosvenor without accountability therefor to any one. She was directed, however, to expend it for the support, maintenance, and education of the daughters, and, to the extent that she did so, he was relieved of his parental obligation. In the absence of evidence to the contrary, it should be assumed that all of it was so used."

The Supreme Court opinion in Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391, relied on by the Tax Court, is the soundest of authority for the proposition that the husband in this case is taxable on the income of his trusts since they merely discharge his legal obligation to support his minor children but the case is not otherwise applicable.

The issue presented is one of construction of the trust instruments, a pure question of law. Therefore the "warrant in the record and a reasonable basis in law" doctrine of Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, rehearing denied 321 U.S. 231, 64 S.Ct.

495, 88 L.Ed. 691, cannot be successfully urged to justify the decision of the Tax Court.

Reversed.