## FUNK v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9341.

Circuit Court of Appeals, Third Circuit.

Argued April 10, 1947.

Decided Sept. 25, 1947.

James S. Y. Ivins, of Washington, D. C., and George A. Donohue, of New York City, for petitioner.

Sewall Key, Acting Asst. Atty. Gen. and J. P. Wenchel, of Washington, D. C. (Helen R. Carloss and Melva M. Graney, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before GOODRICH, McLAUGHLIN, and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

This appeal is taken from a decision of the Tax Court (six judges dissenting) in two consolidated cases. While the principal inquiry involved in the litigation relates to the scope of the petitioner's powers under certain trust instruments, the pressing question for our determination is whether the Tax Court may take judicial notice of its records in another case involving the same trusts but not the same taxpayer so as to make a critical fact finding in the instant litigation.

A further question of law is to what extent the courts of New Jersey will exercise control over the trustee of a New Jersey trust.

The Tax Court ruled that the petitioner was the owner of all the income of four trusts created by her husband and therefore taxable under Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. Int. Rev. Code, § 22(a), despite the fact that part of the trust income was accumulated and added to the corpus during all the tax years involved (1938-1941) and that during three of the four tax years substantial portions of the tax income were disbursed to the settlor husband.

The Tax Court[1] found the facts as stipulated by the parties. Insofar as here pertinent, they are as follows:

On March 1, 1929, petitioner's husband organized Erwin Park, Inc., a Delaware

---

[1] The findings of fact and opinion of the Tax Court are reported in 7 T.C. 890.

corporation, as his personal holding company. He transferred to it a substantial part of his property and became entitled to all of the capital stock of Erwin Park; such property was set up on the books of the corporation at a value of $6,603,439.32. At the beginning of 1938, the authorized capital stock of Erwin Park consisted of 500 Class A shares, 1,000 Class B shares, and 500 Class C shares. Petitioner's husband and one of the members of a firm of accountants and tax consultants were, and continued to be, the corporation's board of directors. Dividends were to be declared and paid at such time and in such amounts as the directors in their absolute discretion should determine, except that of all dividends paid during any calendar year, 5% had to be paid on Class A stock, 15% on Class B stock, and 80% on Class C stock. Voting power was vested exclusively in the holders of Class B stock, of which petitioner's husband owned all the outstanding shares. Four hundred and ninety-nine and four-fifths of the 500 shares of Class A stock constituted the corpus of three trusts which petitioner's husband had set up for each of their children.

On December 29, 1936, petitioner's husband set up four identical irrevocable trusts designated as trusts A, B, C, and D. The corpus of each trust consisted of 125 shares of Erwin Park Class C stock. Petitioner was made the trustee of each trust. The trusts are to exist during the lifetime of the husband. Upon the death of the husband, the trusts will terminate and the principal and undistributed income will be paid to such persons whom the husband may appoint by will, or, in default of appointment, to the children of petitioner and her husband, or to the issue or heirs of such children.

Each trust provided that the trustee should have the power:

"First. During my lifetime to hold, manage, sell, invest and reinvest the same, to receive the income thereof and to pay therefrom all taxes, assessments, and other charges and expenses accruing thereon from year to year and properly chargeable thereto, and all expenses incident to the trust hereby created, *and in her discretion to pay all or a part of the net income an-* nually to me, or to herself, in accordance with our respective needs, of which she shall be the sole judge, and to accumulate and add to principal the balance of such income, if any. Any income so accumulated and added to principal by the Trustee shall become a part of the corpus of the trust and may not thereafter be distributed by the Trustee. (Emphasis supplied.)

\*　　\*　　\*　　\*　　\*

"Third. Upon the death or resignation of the Trustee she shall have the right by will or other instrument in writing to appoint a successor Trustee who shall have the same powers as the Trustee appointed hereby."

The Trustee was also given the usual broad powers of management over the trust corpus, including the power of changing investments and registering the securities in her own name. All stock dividends must be added to principal, and all cash dividends, except liquidating dividends, are to be treated as income.

Petitioner accepted the trusts, received the stock certificates and placed them in a safe deposit box to which she alone had access.

On December 29, 1936, petitioner and her husband exchanged letters relating to trusts A, B, C, and D. The letter from petitioner's husband reads:

"As you know, I have to-day made you the Trustee of four trusts designated as Trusts A, B, C, and D, the property transferred to each trust consisting of 125 shares of capital stock of Erwin Park, Inc. Under the terms of these trusts you are to have discretion annually to divide the income between us or to accumulate and add it to the principal of the trust.

"My objective in setting up the trusts in this way is to provide substantial amounts of income which you may dispose of according to the circumstances which you find to exist at the end of each year. No one can foretell with certainty what those circumstances will be, and it is my desire to put you in a position to exercise your own judgment as to how such circumstances shall be met, to the extent of the income arising from these trust funds.

"It is your legal right and duty to exercise this discretion each year as may seem best to you, and in the exercise of this discretion you are not subject to my control or to the control of any other person."

The reply of petitioner was:

"I have read your letter of to-day with reference to the four new trusts which you are setting up, of which you have made me Trustee.

"I understand that at the end of each year I am to decide whether I will pay the income which I have received as Trustee to you or to myself or divide it between us or accumulate and add it to principal. I am to do any or all of these things in such amounts and in such proportions as I see fit.

"I understand that the effect of these trusts is to place upon me the duty of deciding how the money shall be disposed of and that in making this decision I am not subject to your control or that of any other person." .

In each of the taxable years Erwin Park issued dividend checks in favor of petitioner, as trustee, on the Class C stock held by each trust. The checks were deposited to her account as trustee. As trustee, petitioner filed fiduciary income tax returns and paid the tax due on the dividend income received by each of the trusts in the respective amounts of $3,400, $12,000, $12,-400, and $13,400, for the years 1938, 1939, 1940, and 1941. In the year following the year receipt of the dividends petitioner disposed of the net dividend income from each trust.[2]

Petitioner did not discuss the question of the distribution of the trust income with anyone. She exercised her own discretion and was the sole judge of how the net income was distributed.[3]

The Tax Court premised its forementioned ruling that the petitioner was taxable under Section 22(a) on the ground that she was the sole owner of all the trust income and that any disbursements of income to her husband were in the nature of gifts. It rejected her contention that the trust provisions fall within Section 161(a) (4) and (b), 26 U.S.C.A. Int.Rev.Code, § 161(a) (4), (b), providing taxability to fiduciary of trust income which, in the discretion of the fiduciary, must be either distributed to the beneficiaries or accumulated. In doing so it also disregarded petitioner's urging that the trust income was not disbursed or credited to her or her husband in the taxable year when earned and received by the trust, but was accumulated until a later year.

The crux of the Tax Court's ruling against the petitioner was its factual finding that since her "husband was a man of great wealth" and as such had "no need for the trust income during the taxable years," it was therefore "inconceivable that the husband * * * could successfully have complained in a court of equity in New Jersey that the trustee elected to pay all of the income to herself",[4] and as a consequence petitioner had such absolute control over all the trust income so as to constitute her sole owner thereof.

| [2] Year | Available | To Mr. Funk | To pet'r | Accumulated |
|---|---|---|---|---|
| 1939 | $ 3,268.00 | — | $3,200.00 | $ 68.00 |
| 1940 | 11,091.00 | $11,000.00 | — | 91.00 |
| 1941 | 11,203.20 | 9,000.00 | 2,000.00 | 203.20 |
| 1942 | 10,671.00 | 5,000.00 | 5,500.00 | 171.00 |

[3] In her income tax returns for 1938 and 1939 petitioner reported gross income of $6,647.55 and $33,154.46, respectively; she did not include the gross income of the four trusts.

[4] Noting that under the New Jersey law, the courts of that state, which would govern the administration of these trusts, would not substitute their judgment for that of a trustee given discretion by a trust instrument, except upon proof that the exercise of discretion has been in bad faith, the Tax Court stated:

"Petitioner's husband was a man of great wealth. It is inconceivable that the husband, having voluntarily placed such broad discretionary powers in his wife, and having no need for the trust income during the taxable years, could successfully have complained in a court of equity in New Jersey that the trustee elected to pay all of the income to her-

It is conceded by the Government that the Tax Court went beyond the stipulated facts in making the factual finding as to the "needs or financial position of the tax-payer's husband." The Government frank-ly admits that this critical fact finding was culled by the Tax Court, via judicial notice, from the record in the case of Funk v. Commissioner, 3 T.C. 1292, in which it was held that the petitioner's husband was not taxable on the entire income of the trusts.

Although agreeing that the stipulated facts of the present case do not refer to the needs or the financial condition of the petitioner's husband, the Government re-fers us to the testimony of petitioner her-self before the Tax Court in the Wilfred J. Funk litigation as incontrovertably es-tablishing that neither she nor her husband had needs and that the trust income was hers to take or distribute as she willed. Excerpts from her testimony in that ac-tion are appended to the Government's brief, but this is purely voluntary reprint on its part, without proper authentication or documentation. The Government's posi-tion on this score is simply that the Tax Court apparently did, and was entitled to, take judicial notice of its own records and to use them in a subsequent case involv-ing the same transaction and one of the same parties.

It may be noted that it was not expressly stated in the opinion of the Tax Court that judicial notice was taken of anything; the only reference to the Funk case was in its capacity as a legal precedent.

The petitioner vigorously disputes the power of the Tax Court to take judicial notice and its action in doing so. She stresses the fact that the record in her hus-band's case was used against her without being introduced as evidence into the rec-ord of her case and without an opportunity to overcome that record. The petitioner contends that there is no warrant in the record and no reasonable basis in the law for the Tax Court's decision that she has unfettered command over the trust's in-come. She asserts that her rights under the trusts are those of fiduciary subject to the control of a court of equity.

■ The concept of judicial notice has long been recognized and understood, and its functions and effects have been ap-praised in learned dissertations.[5] We are here dealing with a particular aspect of the doctrine, its application to the Court's own records. It is stated to be the general rule that courts will not travel outside a

---

self. In any event, as the court in Stix v. Commissioner, supra, 2 Cir., 152 F.2d 562, pointed out, in order for a limitation of this kind to restrict the absolute com-mand that petitioner had over the income, it was incumbent on her to show what part of the income she could have been compelled to pay to her husband or to accumulate.

"There is no suggestion in the record in this case that conditions existed during the taxable years relative to the respec-tive needs of petitioner and her husband which, had petitioner taken all of the in-come, would have made her guilty of such gross and callous disregard of her hus-band's needs, as compared to her own, that a court could be summoned to compel her to give her husband some measure of relief. That the husband did receive some of the trust income is unimportant. On the record, this distribution to him was a matter of petitioner's grace and beyond his control. Petitioner has not shown the minimum which a court would have compelled her to give away or ac-cumulate. Everything above such amount petitioner could have kept as her own by reason of the absolute discretionary pow-er conferred upon her in the trust instru-ment. The intent of the grantor of the trusts is demonstrated also in the sub-sequent letters between the parties, set forth in the findings of fact. Without a showing of a minimum amount distributa-ble to her husband, petitioner must be considered as having had absolute com-mand over all of the income.

"During the taxable years here in ques-tion, therefore, we hold that petitioner has failed to demonstrate that her power and command over the income was suffi-ciently hedged in by the language of the trust instruments so as to relieve her from tax on all of the income under sec-tion 22(a). We take the view that she was the owner of all of the income of the trusts, and that the income which she paid to her husband and accumulated was gifts to him."

5 Thayer, Preliminary Treatise on Evi-dence (1898) Ch. 7, and (1890) 3 Harv.L. Rev. 285; Morgan, Judicial Notice (1944) 57 Harv.L.Rev. 269; Model Code of Evi-dence (ALI, 1942) pp. 65–69 and Rules 801–806.

record in order to notice proceedings in another case, even between the same parties in the same court, unless the proceedings are put in evidence. Paridy v. Caterpillar Tractor Co., 7 Cir., 1931, 48 F.2d 166, 168; Morse v. Lewis, 4 Cir., 1932, 54 F.2d 1027, 1029, certiorari denied, 286 U.S. 557, 52 S.Ct. 640, 76 L.Ed. 1291; Divide Creek Irrigation Dist. v. Hollingsworth, 10 Cir., 1934, 72 F.2d 859, 96 A.L.R. 937; A. G. Reeves Steel Construction Co. v. Weiss, 6 Cir., 1941, 119 F.2d 472, 474, certiorari denied, 314 U.S. 677, 62 S.Ct. 181, 86 L.Ed. 541; and see Annotation 96 A.L.R. 944.

The rule has received a strict construction. National Surety Co. v. United States, 9 Cir., 1928, 29 F.2d 92, 97; Paridy v. Caterpillar Tractor Co., supra; Benetti v. United States, 9 Cir., 1938, 97 F.2d 263, 266. However, exceptions are admitted, and it may indeed be more appropriate to say that the extent to which the doctrine will be applied depends to a large degree upon considerations of expediency and justice under the particular circumstances of a case, as well as upon what it is that a court is asked to notice.[6] See 9 Wigmore on Evidence (3rd Ed. 1940) § 2579.

---

[6] Generally, see 1 Jones on Evidence (2d Ed., 1926) §§ 431, 432; 20 Am.Jur., Evidence, §§ 86, 87.

The clearest application of the doctrine is to be found in cases dealing with prior adjudications on writ of habeas corpus: Wong Doo v. United States, 1924, 265 U.S. 239, 44 S.Ct. 524, 68 L. Ed. 999; Salinger v. Loisel, 1924, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989; In re Gersing, 1944, 79 U.S.App.D.C. 245, 145 F.2d 481; Rookard v. Huff, 1944, 79 U.S.App.D.C. 291, 145 F.2d 708; Pope v. Huff, 1944, 79 U.S.App. D.C. 18, 141 F.2d 727; Slaughter v. Wright, 4 Cir., 1943, 135 F.2d 613; Pagette v. McCauley, 9 Cir., 1938, 95 F.2d 839; also, Wells v. United States, 1943, 318 U.S. 257, 63 S.Ct. 582, 87 L.Ed. 746.

With respect to prior applications for discharge from bankruptcy: Freshman v. Atkins, 1925, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193.

Other examples of the application of the doctrine (aside from ancillary or collateral proceedings and earlier records in the same case):

I. As an aid in the application of the principle of stare decisis: United States v. Pink, 1942, 315 U.S. 203, 62 S.Ct. 552, 86 L.Ed. 796; De Bearn v. Safe Deposit & Trust Co., 1914, 233 U.S. 24, 34 S.Ct. 584, 58 L.Ed. 833; see Bienville Water Supply Co. v. Mobile, 1902, 186 U.S. 212, 217, 22 S.Ct. 820, 46 L. Ed. 1132.

II. To examine prior proceedings for material information inherent in the record therein: Dimmick v. Tompkins, 1904, 194 U.S. 540, 24 S.Ct. 780, 48 L.Ed. 1110 (on the writ of habeas corpus the court examined the record in the appeal from the petitioner's conviction to determine reason for delay); Butler v. Eaton, 1891, 141 U.S. 240, 11 S.Ct. 985, 35 L. Ed. 713 (to find that judgment pleaded in bar in the lower court had been reversed on review); Brady v. Beams, 10 Cir., 1942, 132 F.2d 985, certiorari denied 319 U.S. 747, 63 S.Ct. 1032, 87 L.Ed. 1702 (in an action to set aside judgment in prior appealed case, court took judicial notice of its own records to determine whether appellant had knowledge of the facts presently urged); Kithcart v. Metropolitan Life Ins. Co., 8 Cir., 1937, 88 F.2d 407, 411 (in an action to set aside prior unappealed judgment the lower court took judicial notice of its records to determine the nature of the defense therein); Suren v. Oceanic S. S. Co., 9 Cir., 1936, 85 F.2d 324, certiorari denied 300 U.S. 653, 57 S.Ct. 430, 81 L. Ed. 863 (lower court took judicial notice of its records in prior action upon the same cause between the same parties to determine whether the action was dismissed on the merits, but the appellate court required production of the prior records for its own examination).

III. To note uncontroverted matter not formally of record but necessary to the pending action (res judicata not applicable): National Fire Ins. Co. v. Thompson, 1930, 281 U.S. 331, 50 S.Ct. 288, 74 L.Ed. 881 (to examine order); Dunscombe v. Loftin, 5 Cir., 1946, 154 F.2d 963, certiorari denied 329 U.S. 722, 67 S.Ct. 65 (to examine plats and reports of partition commissioners appointed by court in prior proceeding relating to same land); United States v. City of Philadelphia, 3 Cir., 1944, 140 F.2d 406 (on motion for summary judgment the lower court examined certain agreements); United States v. Nudelman, 7 Cir., 1929, 104 F.2d 549, certiorari denied 308 U.S. 589, 60 S.Ct. 115, 84 L.Ed. 493 (to examine agreements); Morse v. Lewis, 4 Cir., 1932, 54 F.2d 1027, certiorari denied 286 U.S. 557, 52 S.Ct. 640, 76 L.Ed. 1291 (to examine certain exhibits); see Divide Creek Irr. District v. Hollingsworth, 10 Cir., 1934, 72 F.2d 859, 862, 863, 96 A. L.R. 937 (distinguishing between appel-

In the Tax Court, judicial notice fares even less well. While the general principles of the doctrine are applied,[7] generally speaking, findings of fact in a prior proceeding are treated merely as prima facie evidence, shifting the burden of going forward on the opposing party, when admitted in evidence in a subsequent proceeding involving the same parties. Goodell-Pratt Co. v. Commissioner, 1927, 6 B.T.A. 1235; National Products Co. v. Commissioner, 1928, 11 B.T.A. 511. The failure to take judicial notice of its own records in a pending proceeding involving the same instrument and the same party, although in a different capacity, was held not to constitute error. Igleheart v. Commissioner, 5 Cir., 1935, 77 F.2d 704. The then Board of Tax Appeals recognized that facts not in the record are beyond the scrutiny of the court on appeal and that orderly procedure requires the parties to a dispute be given every opportunity to meet adversary contentions. Edwards v. Commissioner, 1939, 39 B.T.A. 735, 738 (limiting Groves v. Commissioner, 38 B.T.A. 727). Strictness of approach is especially evident in Wholesale Coal Co. v. Commissioner, 1929, 16 B.T.A. 550, 551. In that case the taxpayer called to the attention of the Board that all the facts pertinent to the issue had been determined in a prior proceeding involving the same taxpayer. Nevertheless, judgment was given for the Commissioner on the pleadings, it being held that it was incumbent upon the taxpayer to *introduce* such findings in evidence.

In the case at bar, we find none of the motivating factors for taking judicial notice of the record in the case of Funk. Certainly, at least, the petitioner deserved the opportunity to overcome the effects of that record, and, in the ordinary course of procedure, that record would not be without probative value to the Commissioner.

Further, the Tax Court held that in New Jersey, a court of equity would not interfere with a trustee in the exercise of his granted discretion unless he acted in bad faith. Accordingly, it resolved that the petitioner's husband, being a wealthy man and having no needs, facts, if they are such, not of record here, could not compel any payment to him. But in New Jersey, it is also required that the trustee act within the limits of sound and honest discretion. Pearce v. Marcellus, Err. & App., 1946, 137 N.J.Eq. 599, 45 A.2d 889. So it was held where the trustee was the "sole judge". Turnure v. Turnure, Err. & App., 1918, 89 N.J.Eq. 197, 104 A. 293. The trustee may not abuse his discretion. Titsworth v. Titsworth, Ch., 1931, 107 N.J.Eq. 436, 152 A. 869. Nor may he exercise his discretion to defeat the purposes of the trust. Hardenburgh v. Blair, Err. & App., 1879, 30 N.J.Eq. 645. So also, we have held that the courts of New Jersey would not support an unfair use by the trustee of his discretionary powers. Sunderland v. Commissioner, 3 Cir., 1945, 151 F.2d 675, 679. The latest New Jersey case involving "absolute discretion" requires taking into consid-

late and inferior courts with respect to the taking of judicial notice); but cf. Walker v. United States, 9 Cir., 1940, 113 F.2d 314, 129 A.L.R. 725; Benetti v. United States, 9 Cir., 1938, 97 F.2d 263; National Surety Co. v. United States, 9 Cir., 1928, 29 F.2d 92.

But as to litigated issues of fact concluded in a prior action involving at least one of the parties in the pending action: White v. Central Dist. & Emergency Hosp., 1938, 69 App.D.C. 122, 99 F.2d 355, 119 A.L.R. 1002 (refusing to judicially notice prior action in which same party was held a charitable corporation); cf. Tyler v. Lowe, 2 Cir., 1943, 138 F.2d 867; In re Aughenbaugh, 3 Cir., 1942, 125 F.2d 887; but see Terminal R. Ass'n of St. Louis v. Kimbrel, 8 Cir., 1939, 105 F.2d 262.

IV. Res judicata and collateral es-

toppel. Paridy v. Caterpillar Tractor Co., 7 Cir., 1931, 48 F.2d 166, citing 15 R.C.L., Judicial Notice, § 42 and Murphy v. Citizens' Bank of Junction City, 82 Ark. 131, 100 S.W. 894, 11 L.R.A.,N.S., 616, 12 Ann.Cas. 535; accord, Annotation, 96 A.L.R. 940; see Divide Creek Irr. District v. Hollingsworth, supra; but cf. Fletcher v. Evening Star Newspaper Co., 77 U.S.App.D.C. 99, 133 F.2d 395 (on motion for summary judgment); see also, De Bearn v. Safe Deposit & Trust Co., supra; Bienville Water Supply Co. v. Mobile, supra.

[7] See Edwards v. Commissioner, 1939, 39 B.T.A. 735, 738; stare decisis: National Products Co. v. Commissioner, 1928, 11 B.T.A. 511, 512; Woodley Petroleum Co. v. Commissioner, 1929, 16 B.T.A. 253, 257, 258.

eration the "standard" laid down in the trust and imposes upon the trustee the obligation of acting in the state of mind contemplated by the settlor. Conlin v. Murdock, Ch., 1945, 137 N.J.Eq. 12, 43 A.2d 218; compare Strong v. Dann, Ch., 1919, 90 N.J.Eq. 329, 108 A. 86. Thus, the mere fact that petitioner's husband may not be in a position to compel payments to himself would not necessarily exclude the possibility, under the New Jersey law, of preventing the petitioner from arbitrarily appropriating the income to her own use.

This is particularly true in view of the provision in the trusts requiring the trustee to accumulate and add to principal the balance of income not disbursed to meet the "respective needs" of the beneficiaries. Indeed, a palpable flaw in the Tax Court's reasoning and discussion is its failure to recognize that under the trusts there are three possible faucets for the siphoning off of the trust income, one to the husband beneficiary, another to the taxpayer beneficiary and a third to the corpus of the trusts.

It is clear from the trust instruments and the letters accompanying them that the settlor of the trusts and the trustee contemplated the possibility that all of the income would not be annually disbursed to either one or both as beneficiaries. That is specially evident from the provision that the balance of income should be added to the principal and that "any income so accumulated and added to principal by the trustee shall become a part of the corpus of the trust and may not thereafter be distributed by the trustee."

Comment cannot be avoided on the Tax Court's concentration on the "wealth" of the husband and his consequential lack of "need" and its failure to consider the petitioner's independent financial condition as evidenced for example, by the record that she enjoyed a gross income in excess of $33,000 during the year 1939, exclusive of the trust income. The Tax Court reasoned that the husband would fail to persuade a New Jersey court to direct the trustee to disburse trust income to him because of his "wealth". It failed to consider that a New Jersey court might give similar consideration to the taxpayer's financial position and in the event of her disbursing the trust income to herself might rule that there was no need and direct her as fiduciary to make restitution for the benefit of the trust corpus.

While the Tax Court has held that the burden rested upon the petitioner to show what amounts she would have been compelled to pay to her husband or to accumulate, that ruling too was predicated on the conclusion that the petitioner could take all of the income for herself. To reach that result, the terms of the trusts must be reduced, at least, to the same nebulous character as those involved in Stix v. Commissioner, 2 Cir., 1945, 152 F.2d 562, on which the Tax Court relied.

The Commissioner suggests that the stipulated facts "may perhaps" be sufficient to independently support the conclusion of the Tax Court, but that suggestion overlooks the fact that we cannot know that the Tax Court would have reached the same result under the New Jersey law, either without the aid of the record in the Wilfred Funk litigation, or, that record being properly invoked, upon petitioner's evidence in view thereof.

We do not hold here that the conclusions of the Tax Court would not be sustained on a proper record or upon adequate findings.

Where the terms of an instrument are subject to doubt, various factors, if properly evidenced, together with applicable legal principles, as indicated by the decisions of the New Jersey courts and by the opinion of the Tax Court herein, become of prime importance, and may indeed prove to be decisive. Cf. May v. Commissioner, 8 T.C. 860. These factors are for the Tax Court in the first instance. Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248 and kindred cases.

For the reasons stated the decision of the Tax Court will be reversed and the case remanded with directions for further proceedings not inconsistent with this opinion.