396 F.2d 381
 UNITED STATES of America,
v.
Richard Anthony WEBBER and Robert J. DuHadaway, trading as R. & R. Engineering Company, and R. & R. Engineering Company, a corporation of the State of Delaware.
Robert J. DuHadaway, Appellant in No. 16,816.
Richard Anthony Webber and R. & R. Engineering Company, Appellants in No. 16,873.
 No. 16816.
 No. 16873.
 United States Court of Appeals Third Circuit.
 Argued February 9, 1968.
 Decided May 31, 1968.
 
 Rehearing Denied in No. 16,816
 June 27, 1968.
 COPYRIGHT MATERIAL OMITTED Courtney H. Cummings, Jr., Killoran & Van Brunt, Wilmington, Del., for appellant in No. 16,816.
 Wanda P. Chocallo, Drexel Hill, Pa., for appellants in No. 16,873.
 Stephen R. Felson, Civil Division, Appellate Section, Dept. of Justice, Washington, D. C. (Edwin L. Weisl, Jr., Asst. Atty., Gen., Alexander Greenfeld, U. S. Atty., John C. Eldridge, Atty., Department of Justice, Washington, D. C., on the brief), for appellee.
 OPINION OF THE COURT
 Before HASTIE, Chief Judge, and FREEDMAN and VAN DUSEN, Circuit Judges.
 VAN DUSEN, Circuit Judge.
 
 
 1
 This case is before the court on appeal from a District Court order entering judgment for plaintiff after hearing argument on cross-motions of the parties for summary judgment. 270 F.Supp. 286. The United States sued the appellants, Richard Anthony Webber (Webber) and Robert J. DuHadaway (DuHadaway), trading as R. & R. Engineering Company, and R. & R. Engineering Company, a Delaware corporation (R. & R. corporation) for breach of warranty. The Government brought suit as the assignee of a general contractor of the United States Atomic Energy Commission, Swinerton & Walbert Co. (Swinerton). Swinerton had performed its general contract for the A. E. C. prior to the assignment.[1] Swinerton entered into a sub-contract or contracts with the appellants, the first of which was allegedly with the individuals Webber and DuHadaway, trading as a partnership, R. & R. Engineering Company (R. & R. partnership).[2]
 
 
 2
 The Government sought recovery for the appellants' breach of their warranty that "no person or selling agency has been retained to solicit or secure this Order upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, * * *."
 
 
 3
 The District Court granted summary judgment for the Government for $20,411.68 plus interest,[3] after reaching the necessary conclusion that no question of fact existed. Taylor v. Rederi A/S Volo, 374 F.2d 545, 549 (3rd Cir. 1967); Robin Construction Company v. United States, 345 F.2d 610, 614-615 (3rd Cir. 1965). In reaching this conclusion under F.R. Civ.P. 56, the District Court considered part of the record of the previous litigation in Browne v. R. & R. Engineering Co.,[4] 164 F.Supp. 315 (D.Del.1958), reversed in part 264 F.2d 219 (3rd Cir. 1959), decision on remand unreported, C.A. No. 1873 (D.Del. July 21, 1959). Explicitly not relying on a theory of collateral estoppel, the judge below considered the several opinions in Browne, and what he described as the "facts" of record in that litigation which he found uncontroverted by the appellants' mere denial in their pleadings.[5] Appellants filed no other documents except some interrogatories and a motion to compel further answers to such interrogatories.
 
 
 4
 Browne v. R. & R. Engineering Co. involved a suit against R. & R. corporation by Edmund V. Browne to recover compensation for services rendered. No written contract or specific oral agreement for a fixed amount was proved, but, as we held in our decision at 264 F.2d 219, Browne was nonetheless entitled to recover for his services in quantum meruit. Part of the services, however, were "rendered pursuant to an agreement" for a contingent fee to be paid for "securing" a Government contract from Swinerton. As such payment for his services violated public policy as promulgated in an Executive Order[6] providing:
 
 
 5
 "Every contract * * * shall contain a warranty by the contractor * * * that no person * * * has been employed or retained to solicit or secure * * * [the] contract upon an agreement or understanding for a * * * contingent fee * * *." [Emphasis supplied.]
 
 
 6
 R. & R. corporation could therefore resist payment for that portion of Browne's services that represented such prohibited activity — placing R. & R. on a list of those invited to bid. On remand, the District Court found that Browne had already recovered for that portion of his services (engineering and other labor) which did not involve "securing" the Swinerton contract for a contingent fee. In his decision in that case, the trial judge computed the amount of the contingent fee by using a percentage of 7½% of the total contract awarded. No appeal was taken from this decision.
 
 
 7
 The appellants challenge the summary judgment entered against them on a great many theories. Restated, their two main arguments are, first, that the prior litigation in Browne v. R. & R. Engineering Co. did not prove the existence of any contingent fee contract that violates the above-quoted warranty and even if Browne does show such a contingent fee agreement, the Browne litigation has no effect upon the partnership or individual appellants who were not formal parties to the previous suit; and, second, that even if Browne does show a contingent fee that may be a breach of warranty, the District Court cannot take judicial notice of the record in the Browne litigation for use against the appellants under F.R.Civ.P. 56.
 
 
 8
 At the outset, the previous decisions in Browne, particularly our decision at 264 F.2d 219, make clear that a finding was made and approved that the plaintiff Browne rendered services pursuant to an agreement or understanding that he would be paid "contingent" compensation. Neither the warranty sued upon nor the governing Executive Order required a contingent fee "contract." Rather, the more general words of "agreement or understanding" (identical in both the Executive Order and the warranty) constitute the basis of liability, if any, in this case.[7] The appellants' contention that there is no contingent fee arrangement in violation of the warranty must be rejected.
 
 
 9
 This finding of "an agreement for a contingent fee" cannot now be denied by R. & R. corporation. R. & R. corporation is collaterally estopped by the Browne litigation from raising any factual question as to the existence of the contingent fee arrangement. It successfully defended against part of Browne's claim by establishing as an affirmative defense that Browne's "claim was in substance a claim for a contingent fee payable on obtaining a government contract and, therefore, illegal." 264 F.2d at 221. Under this Circuit's view of the doctrine of mutuality, Bruszewski v. United States, 181 F.2d 419 (3rd Cir.), cert. den. 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed.2d 632 (1950); cf. Nickerson v. Kutschera, 390 F.2d 812 (3rd Cir., 3/6/68), it makes no difference that the Government was not a party in the prior litigation. R. & R. corporation is bound by the prior determination that Browne "secured" the Swinerton contract under an agreement or understanding for a contingent fee as those terms were used in the warranty required in all contracts by Executive Order. Even though the Browne opinions were not formally introduced in the present suit, we see no reason why a court is confined to an examination of the judgment in ruling on a question of collateral estoppel, particularly under a F.R.Civ.P. 56 motion. See 1B Moore's Federal Practice, ¶ 0.443[4] (1965). Moreover, R. & R. corporation, having avoided payment of a considerable contractual liability by proving the existence of a contingent fee arrangement, cannot here be allowed to prevail on an inconsistent position. Scarano v. Central R. Co. of New Jersey, 203 F.2d 510 (3rd Cir. 1953); 1B Moore's Federal Practice, ¶ 10.405[8], cf. ¶ 0.405[10] (1965).
 
 
 10
 The individual appellants were not formal parties in the prior suit and appeared only as witnesses. As non-parties, they will be collaterally estopped from denying the once-proved contingent fee agreement only if they were "privies" to R. & R. corporation, party-defendant in the Browne litigation. See, e. g., 1B Moore's Federal Practice, ¶ 0.441[3] (1965). As Judge Goodrich wrote, concurring in Bruszewski v. United States, supra, 181 F.2d at 423:
 
 
 11
 "Privity states no reason for including or excluding one from the estoppel of a judgment. It is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata."
 
 
 12
 Determining whether appellants Webber and DuHadaway were "privies" to the corporate defendant in the prior suit, however, requires an examination of the records both in the prior litigation and this suit.
 
 
 13
 In circumstances similar to the present case, whether the individuals exercised sufficient control over or had the requisite interest in the Browne litigation[8] is primarily a question of fact.[9] It appears to us that in the present posture of this case the determination of privity as a matter of "fact" can be made in either of two ways: (1) the Browne decisions can be examined, as they would be examined in considering any question of res judicata or collateral estoppel, for a clear showing that the decision in that case rests on a factual determination that Webber and DuHadaway have a connection to R. & R. corporation or the Browne litigation that makes them "privies"; or (2) the court can take judicial notice under F.R.Civ.P. 56(c) of the documents and other material of record in Browne[10] and can find that privity exists if there is no doubt of the facts on that prior record and also no dispute has been raised as to those facts by material filed in this case.
 
 
 14
 In practice, the first route will establish "privity" if the factual determinations needed in the case at bar were also necessarily resolved in reaching the decision in Browne v. R. & R. Engineering Co. After careful review of the earlier opinions, we are convinced that the "privity" of Webber and DuHadaway is established in the decisions in that case.
 
 
 15
 The District Court's factual recitation makes clear that various actions of the partners, in particular Webber, controlled the legal liability of R. & R. corporation in the Browne litigation. Webber refused to enter the requested "binding agreement" with Browne, Webber refused to enter a fair agreement, Webber told Browne to submit a bill, Webber refused to pay, and Webber sent a lower amount. Most of these activities, ascribed to Webber, took place after the April 23, 1956, incorporation of R. & R. partnership, with Webber clearly regarded as controlling agent of R. & R. corporation. It is noted, in further support of this control, that "Webber and DuHadaway," not the "R. & R. corporation," doubled their own salaries and caused themselves to be paid large bonuses. Furthermore, we do not regard it as mere careless opinion writing that, when referring to the successful defense of a contingent fee "violating an Executive Order," the District Judge wrote:
 
 
 16
 "The defense of illegality was not raised in either the defendants' original or amended answers," 164 F.Supp. at 317 [Emphasis added.]
 
 
 17
 and then continued to refer to plural "defendants" in the next two sentences. Doubt about this clear indication that the partners in fact controlled the litigation is dispelled by footnote 7, 164 F. Supp. at 319:
 
 
 18
 "* * * Defendants, originally happy enough to have plaintiff's sources of information, advice and energetic assistance, have now cast him aside based upon the tardily discovered defense of breach of public policy, a violation of which * * * they participated in as much as he."[11]
 
 
 19
 Accordingly, we think that the peculiar nature of the Browne litigation (suit, for services rendered, brought against a successor corporation for an obligation owed initially and primarily by a partnership) and the determinations necessarily made under the theory of decision in that case (recovery allowed in quantum meruit for benefit received, except for those illegal services performed under an agreement with the partnership for a contingent fee) show that the individual appellants in the present appeal were "privies" to a formal party in the prior litigation, R. & R. corporation, by dint of their control over and interest in the earlier litigation.
 
 
 20
 The second conceptual route for making a determination of "privity" leads to the same conclusion.[12] As we noted above, we think our decision in United States v. City of Philadelphia, 140 F.2d 406 (3rd Cir. 1944), established the correct and salutary ground rule that under F.R.Civ.P. 56(c) a court may take judicial notice of affidavits, properly proved agreements, depositions, sworn testimony, and similar material of public record in a court's own public records. Such material does not differ in type from the material a court can consider when formally filed in a case at bar, and under the record in this case no infirmity should attach because, rather than being formally filed, the material comes before the court via judicial notice. The individual appellants had clear notice from the amended complaint that the Government intended to rely upon parts of the record in the Browne case, including sworn testimony of the appellants themselves. Furthermore, the District Court's order of December 19, 1966 (dealing with appellant DuHadaway's motion to compel further answers to certain interrogatories) gave appellants ample notice that the parts of the Browne record that related to the findings in the several Browne opinions might later be considered by the court. Despite this warning, the appellants filed no material, neither affidavits nor any other documents or papers, that contested any portions of the Browne record. They were content to rely on their pleadings.[13]
 
 
 21
 An examination of completely uncontradicted sworn testimony on the Browne record shows that R. & R. partnership had only two partners, each of whom owned half the partnership. After incorporation, the same two partners owned 51% of the stock of R. & R. corporation and relatives of one, appellant Webber, owned the other 49%. The Government argued in a brief to the District Court in the case at bar that appellants Webber and DuHadaway were privies to the prior Browne suit. The appellants were on notice that the prior record might be used to support this argument as we think it does.[14] Accordingly, even if the question of privity demands a "factual" determination in the case at bar, no controversy over that fact is presented by the record properly before the court.[15] Appellants Webber and DuHadaway, trading as R. & R. partnership, are privies to the judgment in Browne v. R. & R. Engineering Co. under the doctrine of collateral estoppel.[16]
 
 
 22
 As we outlined above, the judgment in Browne estops R. & R. corporation from denying the existence of a contingent fee agreement which violates the terms of the warranty sued upon in the present case. The individual appellants, particularly DuHadaway, argue that even if this is true, the prior decisions nowhere find that the individuals or partnership entered into any contract. R. & R. corporation, therefore, may be in breach of its warranty, but the individuals are not.
 
 
 23
 This argument we find without merit. Whether the question is the partners' entering the contract with Swinerton (and thus making the warranty) or the partners entering into an "agreement or understanding" (not a contract) with Browne (and thus violating their warranty), the theory of decision in the Browne litigation and the explicit findings relied upon in the opinions in that case make clear that both the District Court and this court found the partners made the prohibited contingent fee agreement, and also found that the partners made the warranty to Swinerton.[17] Both determinations are manifest from a review of the necessary chronology of the facts in the Browne decision, which places both the agreement or understanding with Browne and the award of the first contract prior to the incorporation of R. & R. corporation.[18] Since the recovery was found to be in quantum meruit if at all, and since the entity performing the contracts had become the R. & R. corporation at the time of suit, there was no need at the time of final decision to separate distinctly partnership from corporate "benefits received" in measuring the quantum meruit recovery.[19] But the sequence of events showing that the original Swinerton contract was entered into before R. & R. was incorporated, and that the contingent fee arrangement of the partners was not honored after the contract was awarded, was necessary to explain how the alleged oral contingent fee arrangement arose, why it was never formalized, why Browne was suing, why any recovery had to be in quantum meruit, and what additional services in subsequent formation of the corporation he rendered. The defense that part of the quantum meruit recovery violated the Executive Order as a contingent fee necessarily demanded a finding that Browne and the partners reached an agreement concerning a contingent fee, and that, contrary to his justified expectations (mere volunteers cannot recover in quantum meruit), Browne was not paid for his services by a share in the partnership[20] or in the new R. & R. corporation formed "immediately * * * in order to perform the contract" awarded to the partnership.[21]
 
 
 24
 For the reasons above, we find the appellants collaterally estopped by the decision in Browne v. R. & R. Engineering Co. from denying the factual determination made there which establishes in the case at bar their breach of warranty. The appellants defended the prior suit by proving exactly what they seek here to disprove by another trial. The mere allegations of their complaint, unsupported by any other material, is all that suggests a second hearing of their once-given sworn testimony would produce a different outcome. We note that the doctrine of collateral estoppel, particularly in binding privies, should be used carefully to prevent facts once litigated for a unique purpose from subsequently being used to work injustice when the context changes. But the lengthy discussion above demonstrates how, on a record such as that in this case, the doctrine accomplishes the equally important and equitable goals of encouraging judicial finality and preventing expensive and time-consuming relitigation of controversies by parties who have already had their full and fair "day in court." On this record, the present appellants clearly fall in such a category.[22]
 
 
 25
 Appellants' many additional arguments we likewise find without merit. The assignment here is effective and was properly before the District Court in the certified copies of the assignment attached as Exhibit C to the Government's complaint [28 U.S.C. § 1733; 31 U.S.C. §§ 46 & 52(e); F.R. Civ.P. 44(a) and (c)]. Furthermore, regardless of the law of Delaware that may apply to contract warranties, the warranty in the Swinterton contract was required by Executive Order[23] and suits of this nature, for breach of the warranty required by federal policy, are controlled by federal law, Mitchell v. Flintkote Co., 185 F.2d 1008, 1011 (2nd Cir. 1951). Accordingly, we reject the contention that the Government has no cause of action in this case or is not a proper party to suit for recovery of the prohibited fees.[24] Also, we reject the argument that the terms of the contract limit the Government's remedies for breach of warranty.[25] Rather we agree with the Fifth Circuit's analysis of this same warranty in United States v. Paddock, 178 F.2d 394, 396 ff. (5th Cir. 1949), and their conclusion that the language does not clearly evince the intent to create exclusive remedies. Paddock was a subcontractor like the appellants at bar. The District Court's measurement of damages by the amount of the illegal contingent fee is perfectly proper. J. D. Streett & Co. v. United States, 256 F.2d 557 (8th Cir. 1958).
 
 
 26
 The judgment of the District Court will be affirmed.
 
 
 27
 Chief Judge HASTIE concurs in the result.
 
 
 
 Notes:
 
 
 [1]
 Appellants' argument that the assignment lacked consideration is without merit; the assignment was pursuant to the bargained-for Article VII, Paragraph 4, of Swinerton's October 18, 1955, contract with the A. E. C
 
 
 [2]
 The first contract was dated April 4, 1956, for $185,695.00; subsequent "contracts" were labelled "Change Orders." Five such change orders were entered: May 4, 1956, June 4, 1956, July 20, 1956, September 24, 1956, and October 16, 1956, raising the total contracts from Swinerton to $325,489.00. As discussed below, the partnership was incorporated April 23, 1956, after the date on the first contract and before the first "change order."
 
 
 [3]
 Interest was awarded from the date of breach, April 4, 1956. Appellants' contention that the interest award was improper must be rejected, particularly in light of the warranty language referring to the "full amount of such * * * contingent fee."
 
 
 [4]
 Defendant in this litigation was the corporation formed April 23, 1956, as stated in footnote 2, supra
 
 
 [5]
 See F.R.Civ.P. 56(e), which the "Notes of Advisory Committee on Rules" points out was amended in 1963 to overcome a line of cases, chiefly in this Circuit, which allowed a party to oppose summary judgment successfully by resting on averments of his pleadings if "well-pleaded," 28 U.S.C.A., 1967 Supp., F.R.Civ.P. 56 (e), Note 122
 
 
 [6]
 Paragraph 5 of Title II, 50 U.S.C.A. App. § 611, note at 675-676. Paragraph 10 of Part I of Executive Order No. 10210 (Feb. 2, 1951, 16 Fed.Reg. 1049) made applicable to the Atomic Energy Commission by Executive Order No. 10216, 50 U.S.C.A.App. § 611, note at 681-683, is an identical provision to that in Executive Order No. 9001, and apparently would govern, technically, the subcontractor involved in this and the previous litigation
 
 
 [7]
 Paragraph 15 of the Swinerton contract with R. & R. partnership is, with only minor changes, the same language used in paragraph 10 of Executive Order No. 10210, and paragraph 5, Title II, of Executive Order No. 9001
 
 
 [8]
 Restatement, Judgments, § 84 (1942); 1B Moore's Federal Practice ¶ 0.411 [6] (1965)
 
 
 [9]
 See, e. g., Crane Boom Life Guard Co. v. Safe-T-Boom Corporation, 362 F.2d 317, 322 (8th Cir. 1966); Manville Boiler Co. v. Columbia Boiler Co. of Pottstown, 204 F.Supp. 385 (E.D.Pa.1962)
 
 
 [10]
 This Circuit has taken the position that under F.R.Civ.P. 56 a court may take judicial notice of its own public records containing sworn testimony, affidavits and similar material described in F.R.Civ. P. 56(c). United States v. City of Philadelphia, 140 F.2d 406 (3rd Cir. 1944); cf. Hassenplug v. Victor Lynn Lines, 71 F.Supp. 70 (E.D.Pa.), aff'd 163 F.2d 828 (3rd Cir. 1947); 6 Moore's Federal Practice, ¶ 56.11 [9] (1965). Funk v. Commissioner of Internal Revenue, 163 F.2d 796 (3rd Cir. 1947), does not demand a contrary rule. The judicial notice there was not in the context of a F.R.Civ.P. 56 decision and related to litigation in the Tax Court, where "judicial notice fares even less well." 163 F.2d at 802. Moreover, United States v. City of Philadelphia, supra, was cited as an exception to any general rule against judicial notice of a court's own records and as an example of how particular circumstances of a case and considerations of expediency are the relevant touchstones, 163 F.2d at 801 and n. 6
 
 
 [11]
 These statements relate to the preliminary issue decided in Browne v. R. & R. Engineering Co. that the defendants could be allowed to amend their complaint to assert a new affirmative defense as late as the end of the trial held on the previous pleadings. See, also, the unreported decision in Browne v. R. & R. Engineering Co., C. A. No. 1873 (D. Del. July 21, 1959), at p. 2, where the District Judge said "defendant refused to make plaintiff a partner," meaning from the context of this opinion and the previous opinion "defendant Webber."
 
 
 [12]
 It should also be noted that this second conceptual route shows that, under the peculiar circumstances of this case, our use made above of the prior decision in Browne v. R. & R. Engineering Co. is not a "bootstrap" argument: finding parties collaterally estopped to deny they are "privies" in order then to find them collaterally estopped as to other determinations by the court
 
 
 [13]
 See First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (May 20, 1968), and note 5, supra
 
 
 [14]
 It might also be noted that counsel of record for R. & R. corporation, after our remand inBrowne, here represents appellant Webber as well as R. & R. corporation.
 
 
 [15]
 While circumstances can be hypothesized where an appellate court should remand to give the District Court the opportunity first to make the determination that no question is present concerning the facts of appellants "privity," it is also perfectly proper for this court to affirm a judgment on its view of a record requiring such action, even if the reason given below is erroneous. We find the District Court's grant of a motion for summary judgment was correct. We affirm, however, on the grounds of collateral estoppel
 
 
 [16]
 Ark-Tenn Distributing Corp. v. Breidt, 209 F.2d 359, 361 (3rd Cir. 1954); Von Opel v. Brownell, 100 U.S.App.D.C. 341, 244 F.2d 789, 792-793 (1957); E. I. duPont de Nemours & Co. v. Sylvania Industrial Corporation, 122 F.2d 400, 404-405 (4th Cir. 1941)
 
 
 [17]
 See, e. g., Hyman v. Regenstein, 258 F.2d 502, 511 (5th Cir. 1958):
 " * * * collateral estoppel by judgment is applicable only when it is evident from the pleadings and record that determination of the fact in question was necessary to the final judgment and it was foreseeable that the fact would be of importance in possible future litigation." [And see authorities in footnote 4.]
 
 
 [18]
 We find no merit in any contention that the partnership never entered into a contract with Swinerton. The contract was formed when Swinerton accepted R. & R. partnership's bid or offer. If the partners claim to act as promoters or agents for their principal, R. & R. corporation (they gave no affidavits of such and submitted no material of any kind to show any need for trial of some issue of "novation" never before present in this case and now argued in appellant DuHadaway's brief), the contract was awarded before the corporation or principal was in existence. In this circumstance the "agents" can be held personally liable. See, e. g., Restatement, Agency, § 322 (1958)
 
 
 [19]
 Appellant DuHadaway argues strenuously that the Browne litigation involved only R. & R. corporation liability. Because recovery lay finally only inquantum meruit, it is true that benefit to R. & R. measured the damages, but such a theory of the case does not preclude other findings of who made the oral agreement or induced the improper behavior of Browne.
 
 
 [20]
 See, also, the unreported decision in Browne v. R. & R. Engineering Co., C.A. No. 1873 (D.Del. July 21, 1959), at page 2
 
 
 [21]
 It is unnecessary to consider whether the order appealed from can be sustained as a proper entry of summary judgment on the other material before the District Court under F.R.Civ.P. 56 (particularly the testimony in theBrowne record concerning the contingent fee arrangement) that was not relevant to the above application of the doctrine of collateral estoppel.
 
 
 [22]
 See note 6, supra
 
 
 [23]
 The statute of limitations argument has no merit. United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940)
 
 
 [24]
 Paragraph 15 of the Swinerton contract provided in the last sentence:
 "For breach or violation of this warranty, Buyer shall have the right to annul this Order, or, in its discretion, to deduct from the Order price or consideration the full amount of such commission, percentage, brokerage or contingent fee."
 This language, with only a minor omission, is the same language used in paragraph 10 of Executive Order No. 10210 and paragraph 5, Title II, of Executive Order No. 9001.
 
 
 [25]
 Appellant DuHadaway's argument that the second District Court opinion failed to follow our directions on remand is without merit; the decision on remand was proper and unappealed. We need not decide whether the "change orders" are separate contracts and for some reason make the R. & R. corporation liable for a certain portion of the damages, as opposed to the R. & R. partnership which entered the original contract "secured" by Browne for a contingent fee. Such an argument for contribution or apportionment involves a dispute between the individual appellants and R. & R. corporation held jointly and severably liable below, and it is not before the court on this record. Appellants' other arguments have been considered and found to be without merit, particularly in light of the discussion above
 
 
 
 28
 FREEDMAN, Circuit Judge (concurring in part and dissenting in part).
 
 
 29
 I agree with the affirmance of the judgment as to the corporation, whose liability I think is clear.
 
 
 30
 For this purpose, I accept the extension of Bruszewski v. United States, 181 F.2d 419 (3 Cir.), cert. denied, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950) to permit the United States which was a stranger to the Browne case to obtain the affirmative advantage of the decision there by invoking collateral estoppel.[1] I am satisfied, therefore, that the United States as a stranger to the Browne proceeding may enjoy collateral estoppel against the corporation which had successfully defended Browne's claim on the ground that its contract was an invalid contingent fee arrangement.
 
 
 31
 It seems to me, however, that the same result does not follow against the individual defendants. They were not the parties in the Browne case and we should not now invoke collateral estoppel against them on the basis of privity by independently searching the record in the Browne case. The district judge avowedly disclaimed reliance on collateral estoppel and since the question of privity is a factual one which he did not decide and was neither raised nor decided in the Browne case, I think it is undesirable for us on appeal to run the Browne record through our own sieve and screen out findings on which to rest a fresh factual conclusion.
 
 
 32
 Thus it is that although I agree that there are circumstances in which a trial court's judgment may be affirmed for reasons other than those upon which it has relied, I think the parties and the trial court should be given an opportunity to explore the factual circumstances and to reach trial findings rather than have us now construct them.
 
 
 33
 I therefore dissent from the affirmance of the judgments against Webber and DuHadaway.
 
 
 
 Notes:
 
 
 [1]
 See Zdanok v. Glidden Co., 327 F.2d 944, 954-956 (2 Cir. 1964); cf. Currie, Mutuality of Collateral Estoppel — Limits of the Bernhard Doctrine, 9 Stanford L. Rev. 281 (1957); Developments in the Law — Res Judicata, 65 Harv.L.Rev. 818, 861-65 (1952)