**RECORD CLUB OF AMERICA, INC.**

**v.**

**COLUMBIA BROADCASTING SYSTEM, INC. et al.**

**Civ. A. No. 68–1132.**

United States District Court, E. D. Pennsylvania.
March 20, 1970.

Seymour Toll, Philadelphia, Pa., for plaintiff.

E. P. Rome, Pepper, Hamilton & Scheetz, Franklin Poul, J. Stokes Adams, III, R. J. Sugarmann, Philadelphia, Pa., A. R. Harris, Warrington, Pa., for defendants.

## OPINION

TROUTMAN, District Judge.

The plaintiff, Record Club of America, Inc., (RCOA) has filed a complaint consisting of five (5) counts. Count III has already been dismissed as to all defendants, except Columbia Broadcasting System, Inc., (CBS) and Count V has already been dismissed as to all defendants.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, CBS, together with certain other defendants, has now moved for summary judgment as to Count IV of the complaint. Count IV seeks treble damages, costs of suit, reasonable attorneys' fees and injunctive relief by reason of alleged violations of Sections 2(a) and 2(f) of the Act of October 15, 1914, 38 Stat. 730, as amended by the Act of June 19, 1936, 49 Stat. 1526, 15 U.S.C. § 13(a) commonly known as the Robinson-Patman Act. The act provides ·in pertinent part, as follows:

"It shall be unlawful for any person engaged in commerce * * * either directly or indirectly, to discriminate in price between different *purchasers* of commodities of like grade and qual-

ity \* \* \* where such commodities are *sold* for use, consumption, or re-sale \* \* \*, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition \* \* \*. [15 U.S. C. § 13(a)]. (Emphasis added)

\* \* \* \* \* \*

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section." [15 U.S.C. § 13(f)]

The Act applies only to "sales" of commodities to different "purchasers". It does not apply to "licensing" agreements or arrangements. County Theatre Co. v. Paramount Film Distributing Corporation, 146 F.Supp. 933 (E.D.Pa.1956); LaSalle Street Press, Inc. v. McCormick & Henderson, Inc., 293 F.Supp. 1004 (N.D.Ill.1968); Loren Specialty Mfg. Co. v. The Clark Mfg. Co., 241 F.Supp. 493 (N.D.Ill.1956), aff'd 360 F.2d 913 (7th Cir.1966). In the latter case, the Court said at page 914:

> "*The burden rested upon plaintiff* to show that Clark sold its products \* \* \* ". (Emphasis added.)

In Gaylord Shops, Inc. v. Pittsburgh Miracle Mile Town and Country Shopping Center, Inc., 219 F.Supp. 400 (W. D.Pa.1963), the Court, in entering summary judgment in favor of the defendants "with regard to any claim \* \* \* based upon the Robinson-Patman Act" said as follows at page 404:

> "Defendants also contend that § 2 of the Robinson-Patman Act is not applicable because that section *only* applies to 'sales' and does not apply to 'leases'. Again, we find that we agree with defendants." (Emphasis added.)

Plaintiff does not, in its complaint, allege at any time or point to a "sale" or a "purchase" as between CBS and the remaining defendants. It consistently and without exception alleges the existence of "licensing" agreements as between CBS and the remaining defendants. Only in paragraph 58 of the complaint does plaintiff suggest price discrimination "under color of the *exclusive licensing agreements*". (Emphasis added.) But whatever is here or elsewhere alleged in the complaint by way of price discrimination flows entirely from the existence of what plaintiff repeatedly and without exception describes as "exclusive licensing agreements". It does not allege "purchases" and "sales" as between the defendants separate and apart from or in addition to those transactions between the defendants which were based upon or otherwise flowed from the existence of "licensing agreements". The Act does not apply as already shown, to "licensing agreements" and transactions based thereon and flowing therefrom.

In support of their contention that no "sale" or "purchase" was here involved, the defendants rely, as stated, on the repeated references in the complaint to "licensing agreements" and, in addition, submit the affidavit of Asa D. Sokolow, Esquire, who attests to the existence of "licensing agreements" between CBS and non-CBS defendants, the operation of which he describes. He asserts, under oath, that the transactions between the licensors and CBS are not "buy-sell arrangements" and that there are "no sales invoices and no purchases". (See pages 3 and 4 of Sokolow affidavit.) He asserts that "licensing agreements of this nature are common business practices in the record industry". (See page 4 of Sokolow affidavit.) He asserts that CBS, under the licensing agreements obtains an "unmanufactured" product, whereas plaintiff purchases a "finished" product, and that the arrangement is one on which "royalties" are paid and which does *not* constitute a "buy-sell" arrangement. (See pages 3 and 6 of Sokolow affidavit) The contents of the affidavit combined with the repeated references in the complaint to "licensing agreements" seems to establish exactly that, i. e., a licensing arrangement as opposed to a purchase-sale

arrangement contemplated by the Act. The absence of a "sale" is clearly evident from this record. Simply stated, defendants have filed an affidavit establishing the factual basis for the motion here being considered. Additionally, repeated references in the complaint to "licensing agreements", as opposed to "purchases" and "sales", if not corroborative of the facts alleged in defendants' affidavit, are, at least, not inconsistent therewith.

Faced with defendants' motion, the authorities cited in defendants' memorandum and the affidavit filed in support thereof, the plaintiff has elected not to "respond * * * directly" (page 3 of plaintiff's memorandum filed in opposition to said motion), but rather to rely on that language of F.R.C.P.Rule 56(c) which provides, *inter alia*, that judgment shall be granted only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Plaintiff suggests that defendants' motion must fail because it does not refer to the "operative paragraphs of the complaint" and because the affidavit filed by defendants is "insufficient to show that there is no genuine issue as to any material fact". (See page 4 of plaintiff's memorandum.) But reference to the "operative paragraphs of the complaint" shows repeated references to "licensing agreements" as opposed to "sales" or "purchases" and reference to defendants' affidavit discloses unequivocal and unconditional statements and assertions of fact to the effect that the dealings, transactions and relationship between the defendants were based upon "licensing" agreements involving an unfinished product and not upon a purchase and sale agreement or arrangement involving a finished product. (See page 3 et seq. of Sokolow affidavit.) Faced with this plaintiff has had an abundance of opportunity to file a counter-affidavit, but has failed to do so. Rather, plaintiff relies upon a statement found at page 5 of CBS' memorandum that "CBS generally does not acquire finished product" and labels such statement "unsubstantial". (See page 6 of plaintiff's memorandum.) We need not and do not rely upon that statement by counsel. Rather, we rely upon the unequivocal, unconditional, and uncontradicted statements of fact contained in the affidavit filed on behalf of the defendants.

Plaintiff also relies upon certain exhibits extracted from the FTC record[1] and attached to plaintiff's memorandum contending that they show "acquisition of finished product" with the resulting implication or conclusion that the transactions beween the defendants constituted sales notwithstanding the existence of "licensing agreements". A study of these exhibits does not in fact establish consummated "sales" of "finished products". At most exhibits A to D, inclusive, may represent invitations to engage in sales of finished products, but do not, by any stretch of the imagination, establish in fact "sales" of "finished products". Exhibit E, being a portion of the Commission's conclusions of July 25, 1967, apparently vacated and reversed by the Court of Appeals of the Seventh Circuit on June 26, 1969,[2] suggests an unfair trade practice and an unfair method of competition[3], but certainly does not suggest "purchases" and "sales" as between CBS and the remaining defendants. As a matter of fact, Exhibit D refers expressly to "licensing" contracts and agreements, "exclusive grants" and "rent" (referred to by defendants as "royalty"), but nowhere does it refer to "sales" to "different purchasers of commodities of like grade and quality" at discriminatory prices

1. The transactions between the defendants have been the subject of proceedings before the Federal Trade Commission.

2. See page 3 of CBS memorandum filed in support of its motion.

3. Prohibited by Section 5 of the FTC Act.

which is the practice prohibited by the Robinson-Patman Act [4] and the basis for Count IV of plaintiff's complaint.

Similarly, the quote from the testimony of Harold M. Linick, Vice President and Chairman of Liberty Records, before the FTC [5], does not aid the plaintiff. First, he is not certain [6]. Second, and more important, it establishes, at most, possible "sales" of "finished products" as between CBS and Liberty Records [7]. It does not establish such "sales" as between CBS and others. But under the Act, plaintiff must establish sales between "different purchasers". At least *two* sales are required and at least two "different" purchasers must be involved. Klein v. Lionel Corp., 237 F.2d 13 (3rd Cir.1956). Here again, plaintiff fails to effectively overcome the "facts" established by the Sokolow affidavit submitted and relied upon by CBS and other defendants.

Thus, it is clearly evident that defendants' motion is not based upon the "unsubstantiated allegation" of CBS counsel, as plaintiff suggests [8], but upon credible facts properly supported by affidavit as required by Rule 56, which facts are not substantially denied by the repeated and exclusive references to "licensing agreements" throughout plaintiff's lengthy, complete and carefully prepared complaint [9]. Neither are they denied by counter-affidavit filed by the plaintiff.

Rule 56(a) provides, inter alia, for the entry of summary judgment if "there is no genuine issue as to any material fact". Facts established by defendants' affidavit are not, as already shown, placed in issue by plaintiff's affidavit and exhibits. Therefore, F.R.C. P. Rule 56(e) becomes applicable. It provides, *inter alia,* as follows:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial. *If he does not so respond,* summary judgment, if appropriate, shall be entered against him." (Emphasis added.)

The rule "permits a party to pierce the allegations of fact in the pleadings" and to obtain relief by summary judgment when facts set forth in affidavits, depositions, answers to interrogatories, and admissions on file show that there are no genuine issues of material fact to be tried. Chartier v. Empire Mutual Ins. Co., 34 F.R.D. 217, 218 (E.D.Pa.1964). As thus amended in 1963, the rule was designed to "overcome a line of cases, chiefly in this (the Third) Circuit which allowed a party to oppose summary judgment successfully by resting on averments of his pleading if "well pleaded". United States v. Webber, 396 F.2d 381, 384 n. 5 (3rd Cir.1968). Therefore, the rule has been strictly adhered to in this Circuit. Chartier v. Empire Mutual Ins. Co., *supra*; United States v. Webber, *supra*. Admittedly, summary judgment is to be employed sparingly, especially in anti-trust cases where there may be complex factual issues involved; but where, as here, the facts are clear, the rule should be enforced. Collidotronics, Inc. v. Stuyvesant Ins. Co., 290

---

4. 15 U.S.C. § 13(a).

5. Found at page 6 of plaintiff's memorandum submitted in opposition to defendants' motion.

6. He admitted he was testifying only to the "best of my memory". Id.

7. It is noted that Liberty Records does not here appear as a defendant. Possible sales of finished products between CBS and Liberty therefore cannot bear on whether in fact there were sales among the defendants in this matter.

8. See page 6 of plaintiff's memorandum submitted in opposition to defendants' motion.

9. Repeated references throughout the complaint to "licensing agreements" seems to corroborate defendants' affidavit, but we need not rely upon this fact to reach our conclusion.

F.Supp. 978, 982 (E.D.Pa.1968), aff'd. per curiam 412 F.2d 1186 (3rd Cir. 1969.) In First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968) the Supreme Court, in holding that summary judgment had properly been entered in favor of the defendant and against the plaintiff, stated at page 289, 88 S.Ct. at page 1592:

> "What Rule 56(e) does make clear is that a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him." [10]

Continuing, the Court stated at page 290, 88 S.Ct. at page 1593:

> "While we recognize the importance of preserving litigants' rights to a trial on their claims, we are not prepared to extend those rights to the point of requiring that anyone who files an anti-trust complaint setting forth a valid cause of action be entitled to a full-dress trial notwithstanding the absence of any significant probative evidence tending to support the complaint."

■ Concluding, as we do, that defendants' motion for summary judgment is not based, as plaintiff contends, upon "unsubstantiated allegations" contained in memorandum submitted by CBS, but rather upon allegations of fact properly substantiated and supported by appropriate affidavit to which no counter-affidavit has been filed by plaintiff and concluding, further, that the allegations contained in the complaint neither meet nor overcome the specific allegations of fact contained in defendants' affidavit, we have no alternative but to grant the defendants' motions for summary judgment with respect to Count IV of plaintiff's complaint.

10. Footnote 19 reads as follows: "Indeed it was for the precise purpose of overturning a line of cases in the Third Circuit holding that a party could successfully oppose summary judgment by relying on his well-pleaded allegations that Rule 56(e) was amended in 1963. See 6 Moore, Federal Practice, § 56.22 [2] at 2821 (2d Ed. 1966)."